UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 25-_____

Caption [use short title]

Motion for: Authorization of direct appeal certified by the

U.S. District Court for the Southern District of New York

pursuant to 28 U.S.C. § 158(d)(2).

Set forth below precise, complete statement of relief sought:

Defendant-Petitioner Patriach Partners Agency Services,

LLC respectfully requests that the Court, pursuant to

28 U.S.C. § 158(d)(2), authorize the direct appeal

certified by the U.S. District Court for the Southern

District of New York.

In re: TransCare Corporation, Debtor.

Salvatore LaMonica, as Chapter 7 Trustee,

Plaintiff-Respondent,

v.

Patriarch Partners Agency Services, LLC,

Defendant-Petitioner.

MOVING PARTY: Patriarch Partners Agency Services, LLC    OPPOSING PARTY: Salvatore LaMonica, as Chapter 7 Trustee

☐ Plaintiff                    ☐ Defendant
☑ Appellant/Petitioner         ☐ Appellee/Respondent

MOVING ATTORNEY: Mark A. Perry          OPPOSING ATTORNEY: Gary F. Herbst

[name of attorney, with firm, address, phone number and e-mail]

Weil, Gotshal & Manges LLP                   Lamonica Herbst & Maniscalco, LLP

2001 M Street NW, Suite 600, Washington, DC 20036    3305 Jerusalem Avenue, Ste. 201, Wantagh, NY 11793

(202) 682-7511; mark.perry@weil.com          (516) 826-6500; gfh@lhmlawfirm.com

Court- Judge/ Agency appealed from: U.S. District Court for the Southern District of New York

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☑ No  ☐ Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
INJUCTIONS PENDING APPEAL:

Has this request for relief been made below?     ☐ Yes  ☐ No
Has this relief been previously sought in this court?  ☐ Yes  ☐ No

Requested return date and explanation of emergency: _____

_____
_____
_____
_____

Is the oral argument on motion requested?   ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☐ Yes  ☑ No  If yes, enter date:_____

Signature of Moving Attorney:
/s/ Mark A. Perry _____ Date: June 23, 2025    Service : ☐ Electronic  ☑ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

No. 25-

# United States Court of Appeals for the Second Circuit

------------------------------------------------

IN RE: TRANSCARE CORPORATION,

*Debtor.*

------------------------------------------------

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-
ADMINISTERED ESTATES OF TRANSCARE CORPORATION,

*Plaintiff–Respondent,*

v.

PATRIARCH PARTNERS AGENCY SERVICES, LLC,

*Defendant–Petitioner.*

------------------------------------------------

On Certification for Direct Appeal from the
United States District Court for the Southern District of New York,
No. 25-cv-01691, Judge Paul A. Engelmayer

------------------------------------------------

## UNOPPOSED PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 158(d)(2)

------------------------------------------------

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
mark.perry@weil.com

June 23, 2025

*Counsel for Petitioner Patriarch
Partners Agency Services, LLC*

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant–Petitioner Patriarch Partners Agency Services LLC ("PPAS") states that it has no parent company and that no publicly held corporation owns 10% or more of PPAS.

Respectfully submitted,

/s/ Mark A. Perry

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
mark.perry@weil.com

June 23, 2025

*Counsel for Petitioner Patriarch Partners Agency Services, LLC*

i

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 27.1(b), counsel for Defendant–Petitioner Patriarch Partners Agency Services LLC ("PPAS") states that (1) on June 2, 2025, PPAS's counsel notified counsel for the Trustee of PPAS's intent to file this petition; and (2) on June 4, 2025, counsel for the Trustee indicated that the Trustee does not oppose a direct appeal and does not intend to file a response to this petition.

Respectfully submitted,

*/s/ Mark A. Perry*

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
mark.perry@weil.com

June 23, 2025

*Counsel for Petitioner Patriarch Partners Agency Services, LLC*

ii

# TABLE OF CONTENTS

Preliminary Statement....................................................................... 1

Facts Necessary to Understand  the Question Presented ......................... 2

Question Presented......................................................................... 10

Relief Sought ................................................................................ 11

Legal Standard.............................................................................. 11

Argument ..................................................................................... 12

Conclusion.................................................................................... 16

Certificate of Compliance ............................................................... 18

Certificate of Service...................................................................... 19

Addendum..................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*5200 Enterprises Ltd. v. City of New York*,
 No. 3:19-cv-1045-J-39, 2020 WL 10054400
 (M.D. Fla. July 16, 2020) .............................................................. 13

*Bullard v. Blue Hills Bank*,
 575 U.S. 496 (2015) ...................................................................... 11

*Certain Post-Bankruptcy Talc Claimants v. RML, LLC*,
 No. 24-2843 (2d Cir. Feb. 4, 2025), ECF No. 28.1 ......................... 14

*Golden Seahorse LLC v. Wilmington Trust*,
 No. 23-7481 (2d Cir. Feb. 8, 2024), ECF No. 6.1 ........................... 14

*In re Andrew Velez Construction, Inc.*,
 373 B.R. 262 (Bankr. S.D.N.Y. 2007) .............................................. 6

*In re Belmonte*,
 931 F.3d 147 (2d Cir. 2019) ............................................................. 6

*In re Dreier LLP*,
 452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...................................... 15, 16

*In re Dreier LLP*,
 462 B.R. 474 (Bankr. S.D.N.Y. 2011) ............................................ 15

*In re Provident Royalties, LLC*,
 581 B.R. 185 (Bankr. N.D. Tex. 2017) ........................................... 15

*In re Sanchez Energy Corp.*,
 No. 23-20557, 2025 WL 1540357
 (5th Cir. May 30, 2025) .................................................................. 15

*In re Strasser*,
 303 B.R. 841 (Bankr. D. Ariz. 2004) .............................................. 15

iv

*In re SVB Financial Group,*
    No. 24-2882 (2d Cir. Mar. 11, 2025), ECF No. 13.1 ................. 13, 14

*In re TransCare Corp.,*
    Adv. Pro. No. 18-01021, 2020 WL 8021060
    (Bankr. S.D.N.Y. July 6, 2020) .................................................... 3, 4

*In re TransCare Corp.,*
    No. 20-cv-06274, 2021 WL 4459733
    (S.D.N.Y. Sept. 29, 2021) ........................................................... 4, 5

*In re TransCare Corp.,*
    81 F.4th 37 (2d Cir. 2023) .......................................................... 5, 6

*I.R.S. v. Goebel,*
    No. 24-2383 (2d Cir. Jan. 15, 2025), ECF No. 15.1 ....................... 14

*Kelco Disposal, Inc. v. Browning-Ferris Industries of*
    *Vermont, Inc.,*
    845 F.2d 404 (2d Cir. 1988) ........................................................ 16

*Koehler v. Bank of Bermuda Ltd.,*
    101 F.3d 863 (2d Cir. 1996) ........................................................ 14

*S.E.C. v. Credit Bancorp, Ltd.,*
    103 F. Supp. 2d 223 (S.D.N.Y. 2000) ............................................ 14

*United States v. Stanley,*
    483 U.S. 669 (1987) .................................................................... 10

*Weber v. United States,*
    484 F.3d 154 (2d Cir. 2007) ................................................*passim*

## Statutes

11 U.S.C. § 550 ..............................................................*passim*

11 U.S.C. § 544 ............................................................. 4, 15

11 U.S.C. § 548 ...................................................................... 4

28 U.S.C. § 158 ..............................................................*passim*

28 U.S.C. § 1292(b) .......................................................................... 10, 14

N.Y. Debtor & Creditor Law § 276 ............................................. 4, 15, 16

N.Y. Debtor & Creditor Law § 276-a ..................... 1, 4, 8, 10, 11, 15

**Other Authorities**

Collier on Bankruptcy
    (Richard Levin & Henry J. Sommer eds., 16th ed. 2025) .............. 11

Fed. R. Bankr. P. 8006 .................................................................. 8, 10

Fed. R. Bankr. P. 9006 .................................................................... 10

H.R. Rep. No. 109-31, Pt. I (2005),
    *reprinted at* 2005 U.S.C.C.A.N. 88, 2005 WL 832198 ................... 12

Patriarch Partners Agency Services, LLC ("PPAS") respectfully petitions this Court to authorize a direct appeal pursuant to 28 U.S.C. § 158(d)(2) of the legal question certified by the district court (Engelmayer, J.): "[W]hether the single-satisfaction rule of [11 U.S.C.] § 550(d) precludes a fee award under DCL § 276-a in connection with a successful fraudulent transfer claim, where the Trustee obtained a recovery on another claim arising from the same transfer but has not obtained a fee award." A11.

## PRELIMINARY STATEMENT

Where, as here, a bankruptcy court's judgment presents a discrete and dispositive question of law on which there is no controlling precedent, authorization of a direct appeal should be granted. *Weber v. United States*, 484 F.3d 154, 158–61 (2d Cir. 2007) (citing 28 U.S.C. § 158(d)(2)). As the district court recognized in certifying the judgment for direct appeal, that standard is satisfied here. A1; A11.

No court has addressed whether the single-satisfaction rule of 11 U.S.C. § 550(d) precludes a chapter 7 trustee from recovering an attorneys' fees award for a successful fraudulent transfer claim after having already obtained a complete, greater recovery—without a fees award—on another claim arising from the same avoided transfer.

1

Bankruptcy court decisions of the Southern District of New York cast doubt on the permissibility of such a windfall recovery. A09. So, too, does the text of the Bankruptcy Code's single-satisfaction rule. *Id.* But neither this Court nor the Supreme Court has provided controlling "bankruptcy-law precedent" to resolve the issue definitively, justifying this Court's exercise of its "discretion to permit a direct appeal" of the order certified by the district court. *Weber*, 484 F.3d at 158–59, 161 & n.1 (citing 28 U.S.C. § 158(d)(2)).

Consistent with the legislative mandate of § 158(d)(2), a direct appeal will "materially advance the progress of the case," § 158(d)(2)(A)(iii), while "foster[ing] the development of coherent bankruptcy-law precedent" on a pure legal question of first impression, *Weber*, 484 F.3d at 159. PPAS therefore respectfully requests that the Court authorize a direct appeal of the question certified by the district court.

## FACTS NECESSARY TO UNDERSTAND
## THE QUESTION PRESENTED

This case arises from the bankruptcy of TransCare Corporation, which provided ambulance and paratransit services throughout the mid-Atlantic region. A03. PPAS acted as administrative agent on behalf of

2

several lenders to TransCare. *Id.* Lynn Tilton was the indirect majority owner of both TransCare and PPAS. *Id.*

As TransCare's finances deteriorated in February 2016, Ms. Tilton directed PPAS to foreclose on certain of TransCare's assets. *Id.* TransCare and its subsidiaries then filed chapter 7 petitions on February 24, 2016, and Salvatore LaMonica was appointed Trustee the next day. *Id.*

On February 22, 2018, the Trustee commenced an adversary proceeding against, among others, Ms. Tilton and PPAS in the U.S. Bankruptcy Court for the Southern District of New York. *In re TransCare Corp.*, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. Feb. 22, 2018), ECF No. 1. The Trustee asserted a long list of claims, including a breach-of-fiduciary-duty claim against Ms. Tilton (Count One) and a fraudulent-conveyance claim against PPAS (Count Seven). *Id.* ¶¶ 97–102, 127–131 (original complaint); *In re TransCare Corp.*, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. Nov. 18, 2018), ECF No. 53 ¶¶ 108–113, 131–137 (amended complaint).

The bankruptcy court held a six-day bench trial in July and August of 2019, issuing its findings of fact and conclusions of law approximately one year later. *See In re TransCare Corp.*, Adv. Pro. No. 18-01021, 2020 WL 8021060 (Bankr. S.D.N.Y. July 6, 2020) (Bernstein, Bankr. J.). On Count One, the bankruptcy court recommended a $41.8 million judgment

3

against Ms. Tilton for breaching her fiduciary duties to TransCare under Delaware law. *Id.* at *29. On Count Seven, the bankruptcy court found that TransCare had made and PPAS had received a fraudulent conveyance with the intent to hinder and delay TransCare's creditors. *Id.* at *31, 33. The bankruptcy court avoided the transaction under Bankruptcy Code §§ 544, 548, and 550(a), and New York's Debtor and Creditor Law ("DCL") § 276. *Id.* at *29–32. The bankruptcy court entered a $39.2 million judgment against PPAS, along with a derivative, unliquidated attorneys' fees award pursuant to DCL § 276-a. *Id.* at *32–33. To prevent a windfall, and in accordance with the single-satisfaction rule of Bankruptcy Code § 550(d), the bankruptcy court limited the Trustee to only one recovery, explaining: "The damages for breach of fiduciary duty and the fraudulent conveyance remedy the same injury and the Trustee is entitled to only a single satisfaction." *Id.* at 32.

PPAS and Ms. Tilton timely appealed to the district court. *See In re TransCare Corp.*, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. July 27, 2020), ECF No. 146. The Southern District of New York adopted the bankruptcy court's recommended judgment as to Ms. Tilton, with a downward adjustment of the damages award, and affirmed the bankruptcy court's fraudulent-transfer finding as to PPAS. *In re TransCare Corp.*, No. 20-cv-06274, 2021 WL 4459733, at *19–20 (S.D.N.Y. Sept. 29, 2021) (Kaplan, J.).

4

In total, the district court awarded $38.2 million against Ms. Tilton for breaching her fiduciary duties and $39.2 million against PPAS for the fraudulent transfer. *Id.* To the principal award against Ms. Tilton, the district court later added $13.3 million in pre-judgment interest, and $269,800 in post-judgment interest. *In re TransCare Corp.*, No. 20-cv-06523 (S.D.N.Y. Dec. 22, 2021), ECF No. 23 (Kaplan, J.) (amended judgment awarding pre- and post-judgment interest). Like the bankruptcy court, the district court concluded that "the trustee is entitled only to a single satisfaction." *In re TransCare Corp.*, 2021 WL 4459733, at *20.

PPAS and Ms. Tilton timely appealed to this Court, *see In re TransCare Corp.*, No. 20-cv-06274 (S.D.N.Y. Oct. 12, 2021), ECF No. 17, and a merits panel composed of Judges Menashi, Nathan, and Merriam affirmed, *see In re TransCare Corp.*, 81 F.4th 37 (2d Cir. 2023) (Nathan, J.). Like the bankruptcy and district courts, this Court observed that the Trustee was entitled to only a single satisfaction because his claims against Ms. Tilton and PPAS constituted "parallel theories of liability with respect to the same injury." *Id.* at 48; *see also id.* at 58 (noting that § 550(a) "authorizes the Trustee to pursue recovery from all available sources until the full amount of unlawfully transferred Estate property is fully realized

5

for the Estate's creditors" (citing *In re Belmonte*, 931 F.3d 147, 154 (2d Cir. 2019))).[1]

After this Court issued its mandate, the Trustee elected to enforce his judgment against the surety that had secured the judgment against Ms. Tilton. He recovered a total of $51.8 million in full satisfaction of his claim and the judgment. *In re TransCare Corp.*, No. 20-cv-06523 (S.D.N.Y. Dec. 7, 2023), ECF No. 44 (satisfaction of judgment).

The Trustee then sought attorneys' fees from PPAS, even though the sum total of PPAS's liability—including the fees—was millions less than the $51.8 million he had already received from Ms. Tilton:

| | Ms. Tilton | PPAS |
|---|---|---|
| Judgment Principal [Paid by Ms. Tilton] | $38,200,000 | $39,200,000 |
| Pre-Judgment Interest [Paid by Ms. Tilton] | $13,324,997 | $6,025,523 |
| Post-Judgment Interest [Paid by Ms. Tilton] | $269,850 | $229,386 |
| Attorneys' Fees and Costs | $0 | $2,765,358[2] |
| Maximum Satisfaction Under 11 U.S.C. § 550 | $51,794,847 | $48,220,267 |

---

[1] Judge Menashi, who dissented on damages-calculation grounds, concurred with the applicability of the single-satisfaction principle. *In re TransCare Corp.*, 81 F.4th at 59–60 (Menashi, J., dissenting in part) ("The trustee is entitled to a 'single satisfaction,' not to a 'double recovery, or a windfall that would benefit the estate.'" (first quoting 11 U.S.C. § 550(d); then quoting *In re Andrew Velez Constr., Inc.*, 373 B.R. 262, 275 (Bankr. S.D.N.Y. 2007))).

[2] The Trustee originally sought $4,608,931.40 (plus prejudgment interest) in attorneys' fees. A19. The bankruptcy court reduced this amount by 40%. A24; A28–29. Even the original request would not have exceeded the total judgment paid by Ms. Tilton. A21.

PPAS objected to the Trustee's fees request because, among other things, it was barred by § 550(d)'s single-satisfaction principle. *See In re TransCare Corp.*, Adv. Proc. No. 18-01021 (July 15, 2024), ECF No. 178, at 5–9.

The bankruptcy court declined to enforce § 550(d)'s command and instead authorized a $54.6 million total recovery that combined judgment components from both defendants. A13; A21–23 (Jones, Bankr. J.).[3] The bankruptcy court recognized that there was "no dispute" that "[t]he amount the Trustee collected from [Ms.] Tilton exceed[ed] the total possible recovery from PPAS even including the full fee award that the Trustee [sought]." A21. And the bankruptcy court acknowledged that it was unable to locate "any case" squarely addressing the issue. A23 ("Notably, PPAS did not put forward, and the Court did not find, any case [on point] …. In fact, PPAS's counsel acknowledged the lack of such precedent, labeling the present situation 'sui generis.'" (quoting *In re TransCare Corp.*, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. Nov. 22, 2024),

---

[3] The proceeding in the bankruptcy court was reassigned on March 1, 2021, from Judge Bernstein to Judge Jones upon Judge Bernstein's retirement from the bench. *In re TransCare Corp.*, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. Mar. 1, 2021), ECF No. 165.

ECF No. 189, at 21:19)). Still, "[i]n the absence of binding authority," it "construed § 550(d) by examining the 'purpose and effect' of different components of civil judgments and 'the applicable New York statutory scheme.'" A08 (quoting A21). "Based on its evaluation of those, [the bankruptcy court] concluded that a fee award under DCL § 276-a is exempt from the sweep of the single-satisfaction rule." A08–09 (citing A21–23). The bankruptcy court reduced by 40% the amount of attorneys' fees sought by the Trustee on account of "vague and sloppy" billing, A24, and entered judgment on February 7, 2025, A28–29.

On February 21, 2025, PPAS and Ms. Tilton timely appealed the fees award to the district court, which had jurisdiction pursuant to 28 U.S.C. § 158(a). A30. PPAS then timely moved the district court to certify its challenge to the bankruptcy court's judgment for direct appeal to this Court. *See* A54; 28 U.S.C. § 158(d)(2); Fed. R. Bankr. P. 8006(f)(1). PPAS's certification motion detailed how the parties and the bankruptcy court could not marshal controlling bankruptcy authority applying 11 U.S.C. § 550(d) to the Trustee's attorneys' fees request. A64. The question PPAS sought to certify was:

> Whether, as a matter of law, the Bankruptcy Code's single-satisfaction rule (11 U.S.C. § 550(d)) precludes a chapter 7

8

> Trustee from recovering attorneys' fees on a fraudulent transfer award against one defendant (PPAS) when the Trustee has already recovered a complete satisfaction for the same avoided transfer from a second defendant (Ms. Tilton) that undisputedly exceeds the total award (including fees) against the first defendant (PPAS).

A63.

On May 22, 2025, the district court certified the bankruptcy court's February 7, 2025 judgment for direct appeal to this Court. A01.[4] The district court observed that PPAS's "appeal turns on a question, concerning the application of the rule of single satisfaction, 'as to which there is no controlling decision from the Second Circuit or Supreme Court.'" A07 (quoting § 158(d)(2)(A)(i)). The district court noted that the bankruptcy court "did not locate binding precedent supporting either [party's] construction of § 550(d)," and the "cases cited by the Trustee in opposition to certification, none of which applies to the Bankruptcy Code, fall short of being 'controlling' authority." A08–09; *see also* A06 ("[T]he Trustee does not seriously dispute that there is no binding authority on this question."). Because there was "'no dispute' over the relevant facts," the district court

---

[4] The district court also terminated all pending motions, voided the briefing schedule, and placed the case on its suspense docket pending disposition of proceedings in this Court. A11 & n.5.

9

determined that further proceedings would "not sharpen the outstanding issue." A08 (quoting A21). It concluded that a direct appeal of the question presented (as reformulated by the court) would "settle" the "discrete, controlling question of law [that] is at stake" "relatively promptly." *Id.*

PPAS now files this timely petition to authorize a certified direct appeal. A01; *see* Fed. R. Bankr. P. 8006(g); Fed. R. Bankr. P. 9006(a)(1)(C).

## QUESTION PRESENTED

The district court, in its order certifying the bankruptcy court's judgment for direct appeal, formulated the question presented thusly:

> [W]hether the single-satisfaction rule of § 550(d) precludes a fee award under DCL § 276-a in connection with a successful fraudulent transfer claim, where the Trustee obtained a recovery on another claim arising from the same transfer but has not obtained a fee award.

A11. The district court determined that its formulation was "fairly subsumed within PPAS's [initial] question presented." *Id.*[5]

---

[5] Regardless of the precise framing of the question, if this Court authorizes the direct appeal, then it has jurisdiction to review the entirety of the bankruptcy court's judgment awarding fees because § 158(d)(2) grants the circuit courts jurisdiction over appeals from "judgment[s]" and "order[s]," not certified questions. § 158(d)(2)(A); *cf. United States v. Stanley*, 483 U.S. 669, 677 (1987) (noting that 28 U.S.C. § 1292(b) "brings the 'order,' not the question, before the court" of appeals).

## RELIEF SOUGHT

Defendant–Petitioner PPAS respectfully requests that this Court, pursuant to 28 U.S.C. § 158(d)(2), authorize the direct appeal certified by the U.S. District Court for the Southern District of New York.

## LEGAL STANDARD

Normally, an appeal from a judgment of a bankruptcy court is taken to the appropriate district court. 28 U.S.C. § 158(a). Section 158(d)(2), however, provides an exception. It allows an appeal to proceed directly to the appropriate court of appeals if two requirements are met.

First, a bankruptcy court, a district court, a bankruptcy appellate panel, or the parties must certify that one of the disjunctive criteria set forth in 28 U.S.C. § 158(d)(2)(A) is met. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015). That step was satisfied here when the district court certified that "the bankruptcy court's order 'involves a question of law as to which there is no controlling decision.'" A11 (quoting § 158(d)(2)(A)(i)); *see also* 1 Collier on Bankruptcy ¶ 5.06[6] (Richard Levin & Henry J. Sommer eds., 16th ed. 2025) (certification not appealable).

Second, the appropriate court of appeals must "authorize[] the direct appeal" of the bankruptcy court's judgment. § 158(d)(2). At step two, the court of appeals acts as a discretionary "gatekeeper." 1 Collier ¶ 5.06[4][e] & n.49. The court of appeals grants authorization to appeal "where there

11

is uncertainty in the bankruptcy courts," due to, for example, "the absence of a controlling legal decision." *Weber*, 484 F.3d at 161. Authorization is most appropriate when a party requests "guidance on [a] pure question[] of law" that is not "heavily dependent" on unresolved "facts of a case." *Id.* at 158

## ARGUMENT

This Court should authorize PPAS's certified direct appeal under § 158(d)(2) because there is no "serious[] dispute" that the bankruptcy court's award of attorneys' fees involves a question of law as to which there is no controlling decision of this Court or of the Supreme Court. A06.

Section 158(d)(2) is purpose-built for this scenario. Confronting "widespread unhappiness at the paucity of settled bankruptcy-law precedent," Congress enacted § 158 to spur the development of a "dependable body of case law"—"binding" decisions with "stare decisis value" for the lower courts. *Weber*, 484 F.3d at 158 & n.1 (citing H.R. Rep. No. 109-31, Pt. I, at 148 (2005), *reprinted at* 2005 U.S.C.C.A.N. 88, 2005 WL 832198); *see also id.* at 159 ("Congress hoped that [§ 158(d)(2)] would permit [this Court] to resolve controlling legal questions expeditiously and might foster the development of coherent bankruptcy-law precedent."). The text and history of § 158(d)(2) make clear that a direct appeal should be authorized when the question presented involves a "knotty legal

problem" that is not "heavily dependent" on unresolved "facts of a case." *Id.* at 158–59.

Such is the case here. The bankruptcy court, the district court, and both parties all acknowledge that there is no on-point authority from this Court or the Supreme Court to resolve the certified legal question raised in PPAS's appeal. *E.g.*, A23 (bankruptcy court); A07 (district court); A64 (PPAS); A69 (Trustee).[6] Indeed, the bankruptcy court's judgment does not apply precedent; instead, it engages in statutory construction in an attempt to resolve a matter of first impression. *See* A21 (examining the "purpose and effect" of the provisions as well as the "statutory scheme"). Because "[t]here is no dispute" over the relevant facts, A21 (bankruptcy court); A08 (district court), the issue certified is well-suited for direct appeal to and resolution by this Court, like other instances in which this Court has permitted direct appeal under § 158(d)(2), *see, e.g.*, *In re SVB Fin. Grp.*, No. 24-2882 (2d Cir. Mar. 11, 2025), ECF No. 13.1 (granting authorization for direct appeal when the bankruptcy court's order raised

---

[6] The many analogous and non-binding decisions supporting PPAS's interpretation are not "controlling legal decision[s]." *Weber*, 484 F.3d at 161. Direct appeal is therefore proper. *Cf. 5200 Enters. Ltd. v. City of New York*, No. 3:19-cv-1045-J-39, 2020 WL 10054400, at *3 (M.D. Fla. July 16, 2020) (Non-binding, on-point authority "is not the type of controlling circuit court precedent contemplated by § 158(d)(2) that would preclude a direct appeal.").

an unsettled question of law with no controlling precedent); *Certain Post-Bankruptcy Talc Claimants v. RML, LLC*, No. 24-2843 (2d Cir. Feb. 4, 2025), ECF No. 28.1 (same); *I.R.S. v. Goebel*, No. 24-2383 (2d Cir. Jan. 15, 2025), ECF No. 15.1 (same); *Golden Seahorse LLC v. Wilmington Trust*, No. 23-7481 (2d Cir. Feb. 8, 2024), ECF No. 6.1 (same).

A direct appeal also would enhance judicial and party efficiency and materially advance the progress of the case. Apart from the certified question, PPAS's underlying appeal seeks review of the bankruptcy court's failure to apply state law and appropriately segregate the Trustee's compensable and non-compensable work. *See In re TransCare Corp.*, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. July 15, 2024), ECF No. 178. If PPAS prevails on the certified question, this case will be over, and the remaining issues on appeal will be moot—a consideration warranting direct appeal. *Cf. Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–66 (2d Cir. 1996) (permission to appeal under § 1292(b) should be granted to "avoid protracted litigation"); *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) ("The institutional efficiency of the federal court system is among the chief concerns underlying [§] 1292(b)."). Further, even if PPAS's "force[ful]" position on the question presented, A09, is not adopted, this Court's resolution of it will benefit the wider bankruptcy bar

and lower courts, as contemplated by Congress in enacting § 158(d)(2). *See Weber*, 484 F.3d at 159–61.

Nevertheless, if direct appeal is authorized, this Court is likely to adopt what the district court called PPAS's "force[ful]" argument on the merits that § 550(d)'s single-satisfaction rule precludes the attorneys' fees sought by the Trustee here. A09. Section 550 "restore[s] the estate to the financial condition it would have been in if the avoided transfers had not occurred." *In re Provident Royalties, LLC*, 581 B.R. 185, 195 (Bankr. N.D. Tex. 2017). To ensure that § 550(d) serves its purpose "as a restrictor plate on the roaring engine of recovery provided to the trustee in section 550(a)," *In re Sanchez Energy Corp.*, No. 23-20557, 2025 WL 1540357, at *7 (5th Cir. May 30, 2025) (citing *In re Provident Royalties*, 581 B.R. at 195), § 550(d)'s single-satisfaction rule "must be applied on a transfer-by-transfer basis," 581 B.R. at 195.

Accordingly, applying these principles, courts have held that § 550(d) "expressly places controls on § 544 state law avoidance actions" like the Trustee's claim for fees under DCL §§ 276 and 276-a. *In re Strasser*, 303 B.R. 841, 848 (Bankr. D. Ariz. 2004); *see also, e.g.*, *In re Dreier LLP*, 462 B.R. 474, 494 (Bankr. S.D.N.Y. 2011) ("DCL § 276–a is derivative of an actual fraudulent transfer claim under DCL § 276. Hence, it stands or falls with the disposition of that claim." (cleaned up)); *In re Dreier LLP*,

15

452 B.R. 391, 435 (Bankr. S.D.N.Y. 2011) (attorneys' fees under DCL § 276 "will only be recoverable if the Trustee establishes at trial actual fraudulent intent by Defendants"). And analogous decisions of this Court likewise support reading the single-satisfaction rule to preclude the windfall that the Trustee seeks with the requested attorneys' fees here. *See Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vt., Inc.*, 845 F.2d 404, 410–11 (2d Cir. 1988) ("Where, as here, the prevailing party elects a remedy provided by state law, and thereby forgoes its treble damage award, it should forgo the entire remedy provided by federal law, including attorneys' fees.").

Thus, PPAS is likely to prevail on its argument on the merits, and this Court's resolution of the question of first impression presented here will further judicial economy and establish useful precedent for the bankruptcy bar and lower courts, as Congress envisioned in enacting § 158(d)(2).

## CONCLUSION

For the foregoing reasons, Defendant–Petitioner Patriarch Partners Agency Services, LLC respectfully requests that the Court, pursuant to 28 U.S.C. § 158(d)(2), authorize the direct appeal certified by the U.S. District Court for the Southern District of New York.

16

Respectfully submitted,

/s/ Mark A. Perry

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
mark.perry@weil.com

June 23, 2025

*Counsel for Petitioner Patriarch Partners Agency Services, LLC*

17

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Federal Rule of Appellate Procedure 32(g)(1) that the foregoing petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the parts of the petition exempted by Federal Rules of Appellate Procedure 5(b)(1)(E), 5(c), and 32(f), this document contains 3525 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14-point size.

*/s/ Mark A. Perry*

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
mark.perry@weil.com

June 23, 2025

*Counsel for Petitioner Patriarch Partners Agency Services, LLC*

18

## CERTIFICATE OF SERVICE

The undersigned counsel of record certifies that on June 23, 2025:

(1) the foregoing petition was filed with the Clerk of Court of the U.S. Court of Appeals for the Second Circuit using the ACMS system, pursuant to Local Rule 25.1(c); and

(2) the foregoing petition was served by both electronic mail and by U.S. mail on the following counsel for Plaintiff–Respondent Salvatore Lamonica, pursuant to Local Rule 25.1(h)(3)–(4):

Gary F. Herbst
Jacqulyn S. Loftin
Lamonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Ste. 201
Wantagh, NY 11793
(516) 826-6500
gfh@lhmlawfirm.com
jacqulyn15@hotmail.com

Jeffrey Scott Chubak
Amini LLC
131 West 35th Street
Ste 12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com

19

/s/ Mark A. Perry

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
mark.perry@weil.com

June 23, 2025

*Counsel for Petitioner Patriarch*
*Partners Agency Services, LLC*

## ADDENDUM

| Docket Entry | Document | Pages |
|---|---|---|
| | | |
| ECF No. 11, No. 25-cv-01691 (S.D.N.Y. May 22, 2025) (Engelmayer, J). | Opinion and Order Certifying Direct Appeal Under 28 U.S.C. § 158(d)(2) | A01–12 |
| ECF No. 190, No. 16-10407, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. Feb. 5, 2025) (Jones, Bankr. J). | Decision Partly Granting Trustee's Motion to Approve Attorneys' Fees | A13–28 |
| ECF No. 191, No. 16-10407, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. Feb. 7, 2025) (Jones, Bankr. J). | Judgment Awarding Attorneys' Fees | A29 |
| ECF No. 192, No. 16-10407, Adv. Pro. No. 18-01021 (Bankr. S.D.N.Y. Feb. 21, 2025) | PPAS's Notice of Appeal | A30–53 |
| ECF No. 4, No. 25-cv-01691 (S.D.N.Y. Apr. 4, 2025) | PPAS's Motion for Certification of Direct Appeal | A54–66 |
| ECF No. 5, No. 25-cv-01691 (S.D.N.Y. Apr. 10, 2025) | Trustee's Response in Opposition to Motion for Certification of Direct Appeal | A67–70 |
| ECF No. 7, No. 25-cv-01691 (S.D.N.Y. Apr. 17, 2025) | PPAS's Reply in Support of Its Motion for Certification of Direct Appeal | A71–74 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:  TRANSCARE CORPORATION *et al.*, <br><br> Debtors. | 25 Civ. 1691 (PAE) <br><br> <u>OPINION & ORDER</u> |
| SALVATORE LAMONICA, *as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation et al.*, <br><br>                                  Plaintiff, <br>              -v- <br> LYNN TILTON *et al.*, <br><br>                                  Defendants. | |

PAUL A. ENGELMAYER, District Judge:

This bankruptcy appeal arises from a long-running adversary proceeding brought by the

Chapter 7 Trustee of TransCare Corporation ("TransCare") against Lynn Tilton, and an entity

she controlled, Patriarch Partners Agency Services, LLC ("PPAS").  In an earlier appeal, the

Second Circuit affirmed judgments that the bankruptcy court and the district court entered in

favor of the Trustee on (1) a fraudulent transfer claim against PPAS, and (2) a breach-of-

fiduciary-duty claim against Tilton arising from the same transfer.  *See LaMonica v. Tilton* (*In re*

*TransCare Corp.*), 81 F.4th 37, 59 (2d Cir. 2023) ("*TransCare I*"), *aff'g* 20 Civ. 6274 & 20 Civ.

6523, 2021 WL 4459733 (S.D.N.Y. Sept. 29, 2021).  The Circuit, however, limited the Trustee

to a single recovery on these "parallel" theories of liability, under the Bankruptcy Code's rule of single satisfaction. *Id.* at 48.[1]

After the Circuit's mandate issued, the Trustee collected on the judgment against Tilton. The Trustee then sought, and the bankruptcy court awarded, attorney's fees from PPAS as to the fraudulent transfer claim. The court overruled PPAS's objection to the fee application based on the single-satisfaction rule.

PPAS has now appealed. It formulates the following question as dispositive: "whether the single-satisfaction rule precludes a chapter 7 Trustee from recovering attorneys' fees on a fraudulent transfer award against one defendant (PPAS) when the Trustee has already recovered a complete satisfaction for the same avoided transfer from a second defendant (Ms. Tilton) that undisputedly exceeds the total award (including fees) against the first defendant (PPAS)."

PPAS moves to certify this question for direct appeal to the U.S. Court of Appeals for the Second Circuit under 28 U.S.C. § 158(d)(2), based on the absence of a controlling decision of the Second Circuit or the Supreme Court on this point.

For the following reasons, the Court grants PPAS's motion to certify a direct appeal, while noting the possibility that the Circuit may find a slightly reformulated version of the question presented to more aptly capture the decisive issue.

## I.    Background

### A.    Factual Background

The Court assumes familiarity with the factual background relevant to this controversy, which is set out in detail in the Second Circuit's decision, *TransCare I*, 81 F.4th at 43–49, and

---

[1] When a bankruptcy court avoids a fraudulent transfer, the trustee may recover for the benefit of the estate either "the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). "The trustee is entitled to only a single satisfaction," *id.* § 550(d); she cannot obtain a double recovery or twice the full value of a fraudulent transfer.

the bankruptcy court decision on appeal, Dkt. 4, Ex. 2, at 4–8 ("Bankr. Ct. Order"). The

following summary focuses on the facts necessary for an assessment of the limited issues

presented.

TransCare was in the business of providing ambulance and paratransit services in the

mid-Atlantic region. *TransCare I*, 81 F.4th at 44. Tilton indirectly held the majority of its

equity. *Id.* PPAS, a Tilton-controlled entity, acted as an administrative agent on behalf of

several lenders to TransCare. *Id.*

By the end of 2014, TransCare had run into "serious financial problems." *Id.* These

problems deepened, and, in February 2016, Tilton directed PPAS to foreclose on certain of

TransCare's assets. *See id.* at 46. On February 24, 2016, TransCare and its subsidiaries filed for

Chapter 7 bankruptcy. *See id.* at 47. The next day, Salvatore LaMonica was appointed as the

Trustee for the TransCare estate. *See id.*

On February 22, 2018, the Trustee initiated an adversary proceeding against Tilton and

PPAS in this District. *See LaMonica v. Tilton (In re TransCare Corp)*, No. 18-1021, 2020 WL

8021060, at *1 (Bankr. S.D.N.Y. July 6, 2020) (Bernstein, J.). Along with claims not relevant

here, the Trustee brought a fraudulent conveyance claim against PPAS and a breach-of-

fiduciary-duty claim against Tilton. *See TransCare I*, 81 F.4th at 47–48. After a six-day bench

trial, Judge Bernstein issued his findings as to the former claim, and proposed findings as to the

latter. *Id.* He (1) found that PPAS had engaged in an actual fraudulent conveyance and awarded

damages, plus reasonable attorney's fees under New York Debtor and Creditor Law § 276-a

("DCL § 276-a"); and (2) recommended a finding that Tilton had violated her fiduciary duties of

loyalty and good faith.[2] *See TransCare I*, 81 F.4th at 47–48; *see also LaMonica*, 2020 WL 8021060, at *32–33. Tilton and PPAS appealed to the district court. *TransCare I*, 81 F.4th at 48.

In September 2021, Judge Kaplan issued a decision that (1) affirmed the bankruptcy judge's fraudulent transfer finding as to PPAS, and (2) adopted the recommendation that Tilton be found liable for breaching her fiduciary duties to TransCare. *See LaMonica v. Tilton* (*In re TransCare Corp.*), 20 Civ. 6274 & 20 Civ. 6523, 2021 WL 4459733, at *19–20 (S.D.N.Y. Sept. 29, 2021). Judge Kaplan awarded $39.2 million in damages against PPAS for the fraudulent transfer and $38.2 million against Tilton for her breach of fiduciary duties. *Id.* He noted, however, that the Trustee "is entitled only to a single satisfaction" because "the damages for the breach of fiduciary duty and the fraudulent conveyance remedy the same injury." *Id.*

The Second Circuit affirmed Judge Kaplan's decision. *See TransCare I*, 81 F.4th at 59; *see also id.* at 48 ("Because these are parallel theories of liability with respect to the same injury, the district court limited the Trustee to only a single satisfaction.").

The Trustee thereafter collected the supersedeas bond securing the judgment against Tilton pending resolution of the appeal. Bankr. Ct. Order at 7. Including pre- and post-judgment interest, the Trustee's recovery against Tilton amounted to approximately $51.8 million. *Id.*

---

[2] The fraudulent conveyance claim was a "core" bankruptcy proceeding brought under the Bankruptcy Code and New York law. The Trustee's breach-of-fiduciary-duty claim was a "non-core" bankruptcy proceeding arising under Delaware law. *See Stern v. Marshall*, 564 U. S. 462, 473–75 (2011) ("[B]ankruptcy courts may enter final judgments in all core proceedings arising under title 11, or arising in a case under title 11. In non-core proceedings, by contrast, a bankruptcy judge may only submit proposed findings of fact and conclusions of law to the district court." (citation omitted)).

4

**B.      The Trustee's Motion to Approve Attorney's Fees**

On February 7, 2024, the Trustee moved the bankruptcy court (Jones, J.)[3] to approve

attorney's fees of $4,608,931 from PPAS. *See* Bankr. Ct. Order at 7.  PPAS opposed, on the

ground that additional recovery from it was barred by the single-satisfaction rule. *See id.* at 7–8.

That was so, PPAS argued, because the Trustee had already recovered $51.8 million from Tilton,

which exceeded the $45.5 million judgment against PPAS, inclusive of pre- and post-judgment

interest. *Id.* at 9.  As depicted by PPAS, the respective judgments broke down as follows:

| | **Ms. Tilton** | **PPAS** |
|---|---|---|
| Judgment Principal [Paid by Ms. Tilton] | $38,200,000 | $39,200,000 |
| Pre-Judgment Interest [Paid by Ms. Tilton] | $13,324,997 | $6,025,523 |
| Post-Judgment Interest [Paid by Ms. Tilton] | $269,850 | $229,386 |
| Attorneys' Fees and Costs | $0 | $2,765,358 |
| Maximum Liability and Satisfaction under 11 U.S.C. § 550 | **$51,794,847** > | **$48,220,267** |

Dkt. 4 at 5 ("PPAS Br.").

The bankruptcy court granted the Trustee's motion but substantially trimmed the fee

award he sought.  Noting that the relevant facts were undisputed, Judge Jones found the Trustee

entitled to attorney's fees because his "entitlement as against PPAS in this action incorporates

state law fraudulent conveyance remedies, and . . . the applicable New York statutory scheme

authorizes awards of attorneys' fees as a component of a prevailing plaintiff's judgment." *Id.* at

9.  And, he found, the single-satisfaction rule did not bar a fee award, because the Trustee's

recovery from Tilton did not represent "satisfaction of any attorneys' fee award that was entered

in addition to PPAS's or Tilton's obligations to pay the base judgment amount plus interest." *Id.*

at 10.  However, he reduced by 40% the total fees sought by the Trustee, finding the timesheets

---

[3] On March 1, 2021, the case was reassigned to Judge Jones from Judge Bernstein, upon his
retirement from the bench. *See LaMonica v. Tilton*, No. 18-1021, Dkt. 165.

the Trustee had submitted "vague and sloppy" and that they prevented him from finding

reasonable the full amount of the legal work performed. *Id.* at 12–14, 16.

### C.    This Appeal

On February 27, 2025, PPAS filed a notice of appeal to this Court of the bankruptcy

court's decision approving the attorney's fees. Dkt. 1.  On April 4, 2025, PPAS moved for

certification of direct appeal to the Second Circuit. Dkt. 4.  On April 10, 2025, the Trustee

opposed. Dkt. 5 ("Tr. Br.").  On April 17, 2025, PPAS replied ("PPAS Reply Br."). Dkt. 7.  On

May 8, 2025, the Clerk of the Court issued its Notice of Record of Appeal Availability. Dkt. 9.

## II.    Discussion

PPAS seeks certification of a direct appeal, under 28 U.S.C. § 158(d)(2), presenting the

following question:

> whether the single-satisfaction rule precludes a chapter 7 Trustee from recovering
> attorneys' fees on a fraudulent transfer award against one defendant (PPAS) when
> the Trustee has already recovered a complete satisfaction for the same avoided
> transfer from a second defendant (Ms. Tilton) that undisputedly exceeds the total
> award (including fees) against the first defendant (PPAS).

PPAS Br. at 6.  PPAS argues that this question must be certified under § 158(d)(2), because there

is "no controlling decision" of the Second Circuit or the Supreme Court.  As developed below,

the Trustee does not seriously dispute that there is no binding authority on this question.  And all

agree that the Circuit's resolution of this pure-law question would dispose of the sole outstanding

issue in these proceedings. *See* PPAS Br. at 2; Tr. Br. at 2.

For the following reasons, the Court finds that certification is merited.

Section 158(d)(2) of the Bankruptcy Code, the provision under which PPAS seeks

certification, "foster[s] the development of coherent bankruptcy-law precedent" and "facilitates

[circuit courts'] provision of guidance on pure questions of law." *Weber v. United States*, 484

F.3d 154, 158–59 (2d Cir. 2007).  It provides that a district court "shall" certify a bankruptcy

6

court's order for direct appeal to the court of appeals if (1) it involves a question of law "as to

which there is no controlling decision" by the relevant court of appeals or the Supreme Court or

a "matter of public importance"; (2) it involves a question of law "requiring resolution of

conflicting decisions"; or (3) a direct appeal "may materially advance the progress" of the case.

28 U.S.C. § 158(d)(2)(A)–(B).  Section 158(d)(2)(A), written in the disjunctive, allows a

"broader range" of decisions to be certified than § 1292(b), the discretionary interlocutory-appeal

provision. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015).  Certification under § 158(d)(2)

is proper when "any one" of its three requirements is met, whereas § 1292(b) allows certification

"only when three enumerated factors suggesting importance are all present." *Id.* at 508.  And,

unlike § 1292(b), § 158(d)(2) "expressly provides that the lower court may certify that a decision

is susceptible of direct appeal solely because there is no governing legal precedent." *Weber*, 484

F.3d at 159 n.4.

 If the district court certifies the order for direct appeal, then the court of appeals "has

discretion to hear the matter." *Id.*  The Second Circuit "will be most likely to exercise [its]

discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts." *Id.* at

161.  Among other scenarios, the Circuit has explained, it is apt to intervene (1) in "the absence

of a controlling legal decision," and (2) "where [the court] is called upon to resolve a question of

law not heavily dependent on the particular facts of a case, because such questions can often be

decided based on an incomplete or ambiguous record." *Id.* at 158.

 That is the case here.  The appeal turns on a question, concerning the application of the

rule of single satisfaction, "as to which there is no controlling decision from the Second Circuit

or Supreme Court." 28 U.S.C. § 158(d)(2)(A)(i).  The bankruptcy court noted that apposite case

law is lacking on (1) whether the single satisfaction rule limits the Trustee to a single recovery

for all claims deriving from the same fraudulent transfer, such that complete satisfaction on one claim precludes an award of attorney's fees on another claim (as PPAS argued); or (2) whether the Trustee may fully recover on one claim and obtain attorney's fees on another claim (as the Trustee argued).  It did not locate binding precedent supporting either construction of § 550(d), but found the latter construction more persuasive.  *Compare* Bankr. Ct. Order at 11 ("[T]he Court did not find . . . any case where the recovery of statutory interest from another judgment obligor meant that a separate fee award against a different party became unenforceable by operation of the single-satisfaction provision"), *with In re Springfield Hosp., Inc.*, 618 B.R. 109, 115–16 (Bankr. D. Vt. 2020) ("Controlling law for the purposes of section 158(d)(2)(A)(i) is that which admits of no ambiguity in resolving the issue . . . ."), *direct appeal accepted sub nom.*, *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 413 n.10 (2d Cir. 2022), *and In re Bruce*, No. 21 Civ. 7455, 2021 WL 6111925, at *3 (S.D.N.Y. Dec. 27, 2021) (that bankruptcy court did not "point[] to controlling authority from the Circuit or Supreme Court further supports the conclusion that there is no such authority on this question of law"), *direct appeal accepted*, 22-134 (2d Cir. May 4, 2022).  And the bankruptcy court found there was "no dispute" over the relevant facts, *id.* at 9, such that proceedings in this Court will not sharpen the outstanding issue.  Thus, "a discrete, controlling question of law is at stake," which the Circuit "may be able to settle . . . relatively promptly." *Weber*, 484 F.3d at 161.

The bankruptcy court's reasoning reflects the type of "uncertainty," *id.*, that Congress sought to dispel through Section 158(d)(2).  In the absence of binding authority, the bankruptcy court construed § 550(d) by examining the "purpose and effect" of different components of civil judgments and "the applicable New York statutory scheme." Bankr. Ct. Order at 9.  Based on its evaluation of those, it concluded that a fee award under DCL § 276-a is exempt from the sweep

8

**A08**

of the single-satisfaction rule. *See id.* at 9–11. But the text of § 550 does not dictate that result. It is silent as to the impact of that rule on a separate bid for a fee award when brought against an affiliated defendant.[4] And PPAS's argument to the contrary has some force. Its reading of the provision—that § 550(d) "caps the Trustee's total recovery at the value of the avoided transfer, regardless of the nature of the underlying claims asserted"—is textually available and draws some support from bankruptcy court decisions in this District. PPAS Br. at 6; *see, e.g., Gowan v. The Patriot Grp., LLC*, 452 B.R. 391, 428 (Bankr. S.D.N.Y. 2011) (attorney's fees under DCL § 276 "will only be recoverable if the Trustee establishes at trial actual fraudulent intent by Defendants"); *In re Dreier LLP*, 462 B.R. 474, 494 (Bankr. S.D.N.Y. 2011) ("DCL § 276-a is derivative of an actual fraudulent transfer claim under DCL § 276. Hence, it stands or falls with the disposition of that claim."); *cf. TransCare I*, 81 F.4th at 48 (recognizing applicability of single-satisfaction rule); *id.* at 59 (Menashi, J., dissenting in part as to application of this rule). Section 158 does not require more for certification. *See Weber*, 484 F.3d at 159 n.4 ("[T]he lower court may certify that a decision is susceptible of direct appeal *solely* because there is no governing legal precedent." (emphasis added)).

The cases cited by the Trustee in opposition to certification, none of which applies the Bankruptcy Code, fall short of being "controlling" authority. *See* Tr. Br. at 2. In *West Virginia v. United States*, the Supreme Court held that the federal government could recover prejudgment interest on a payment for "site preparation costs" owed by a state under the Disaster Relief Act

---

[4] *See* 11 U.S.C. § 550(d) ("The trustee is entitled to only a single satisfaction under subsection (a) of this section."); *id.* § 550(a) ("[T]o the extent that a transfer is avoided . . . , the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."); *see also In re Prudential of Fla. Leasing, Inc.*, 478 F.3d 1291, 1299 (11th Cir. 2007) (bankruptcy court was required to apply "federal rule of single satisfaction" "rather than Florida law").

9

of 1970. 479 U.S. 305, 310 (1987). The Court explained that "[p]rejudgment interest is an

element of complete compensation" and "fully repaying the Federal Government for any costs of

site preparation will further the distribution of the burdens of disaster relief that Congress

intended." *Id.* at 310–11. And in *Atlanta Shipping Corp. v. Chemical Bank*, the Circuit, in a

footnote, noted that the district court's dismissal of state law claims "had the effect of

dismissing" the plaintiff's fees claim under DCL § 276-a, because it "is ancillary to the other

DCL claims, it stands or falls with their disposition and needs no separate consideration." 818

F.2d 240, 245 n.1 (2d Cir. 1987); *see also id.* at 243 (considering whether "admiralty jurisdiction

is available to consider an equitable claim to set aside a transfer to a creditor allegedly made to

frustrate payment of a maritime debt"). But neither case addresses the bankruptcy statute at

issue, much less the operation of the single-satisfaction rule. *Cf. Ark. Game & Fish Comm'n v.

United States*, 568 U.S. 23, 35 (2012) ("[G]eneral expressions, in every opinion, are to be taken

in connection with the case in which those expressions are used. If they go beyond the case, they

may be respected, but ought not to control the judgment in a subsequent suit when the very point

is presented for decision." (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821)

(Marshall, C.J.))). To be sure, these cases may be read to support, conceptually, that a fee award

under DCL § 276-a remedies an injury that is distinct from the underlying judgment and thus

should not trigger the single-satisfaction rule. *See* Tr. Br. at 3. But it is wrong to argue that these

cases *control* the outcome here.

In sum, the Court finds that certification is warranted, because "there is no controlling

decision from the Second Circuit or Supreme Court" on the single-satisfaction issue here. 28

U.S.C. § 158(d)(2)(A); *see, e.g.*, *In re SVB Fin. Grp.*, No. 24 Civ. 6484, 2024 WL 4345730, at *2

(S.D.N.Y. Sept. 30, 2024) ("[A] district court must certify an order for direct appeal if any one of

the conditions in Section 158(d)(2) is met[.]"), *direct appeal accepted*, 24-2882 (2d Cir. Mar. 11,

2025); *In re Bruce*, 2021 WL 6111925, at *5 ("Because I find that at least one of the three

circumstances enumerated in § 158(d)(2)(A) is present—that the Bankruptcy Court's order

involves a question of law as to which there is no controlling decision from the Second Circuit or

the Supreme Court—the statute requires that I certify the Order for direct appeal."). To be sure,

the Circuit may find the decisive issue more succinctly formulated: "whether the single-

satisfaction rule of § 550(d) precludes a fee award under DCL § 276-a in connection with a

successful fraudulent transfer claim, where the Trustee obtained a recovery on another claim

arising from the same transfer but has not obtained a fee award." But that question is fairly

subsumed within PPAS's proposed question presented.

## CONCLUSION

For the foregoing reasons, the Court grants PPAS's motion to certify for direct appeal

under 28 U.S.C. § 158(d)(2). *See supra* at p.5. The Court accordingly certifies that the

bankruptcy court's order "involves a question of law as to which there is no controlling decision

of the court of appeals for the circuit or of the Supreme Court of the United States." 28 U.S.C.

§ 158(d)(2)(A)(i).

The Court respectfully directs the Clerk of Court to terminate all pending motions, to

transmit a copy of this decision to the Second Circuit, and to place this case on the Court's

suspense docket pending disposition of the appeal.[5]

---

[5] On May 16, 2025, PPAS moved to stay the schedule for briefing its appeal to this Court
pending resolution of its motion for direct certification, on the ground that certification would
divest this Court of jurisdiction over the sole issue on appeal. Dkt. 10; *see* 28 U.S.C. § 158(d)
(the courts of appeals "shall have jurisdiction" upon certification); *Coinbase, Inc. v. Bielski*, 599
U.S. 736, 740 (2023) ("An appeal, including an interlocutory appeal, 'divests the district court of
its control over those aspects of the case involved in the appeal.'"; Congress legislates against

SO ORDERED.

Paul A. Engelmayer
_____
Paul A. Engelmayer
United States District Judge

Dated:  May 22, 2025
        New York, New York

--------

this "clear background principle." (quoting *Griggs v. Provident Consumer Discount Co.*, 459
U.S. 56, 58 (1982))).  The Trustee did not join in PPAS's stay request, but has not opposed it.
*See* Dkt. 10-1 at 2.

        In light of the certification of the appeal, the Court voids the briefing schedule in this
Court.  In the event that the Second Circuit denies PPAS's petition, counsel are to promptly
notify this Court, which will set a schedule for briefing under which PPAS's opening brief in this
Court will be due 30 days after the Circuit's decision.  *Cf.* Fed. R. Bankr. P. 8018(a)(1).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:                                                    Chapter 7

TRANSCARE CORPORATION, et al.,                            Case No. 16-10407 (DSJ)
                                                          (Jointly Administered)

                          Debtors.

-----------------------------------------------------------------X
SALVATORE LAMONICA, as Chapter 7 Trustee
of the Jointly Administered Estates of
TransCare Corporation, et al.,

                          Plaintiff,                      Adv. Proc. No. 18-01021 (DSJ)

              v.

LYNN TILTON, et al.,

                          Defendants.

-----------------------------------------------------------------X

## DECISION PARTLY GRANTING TRUSTEE'S MOTION TO APPROVE ATTORNEYS' FEES

**APPEARANCES:**

**LAMONICA, HERBST & MANISCALCO, LLP**

*Counsel for Plaintiff/ Chapter 7 Trustee*

3305 Jerusalem Avenue

Wantagh, New York 11793

By:    Gary Herbst, Esq.

       Jacqulyn S. Loftin, Esq.

**AMINI LLC**

*Counsel for Plaintiff/ Chapter 7 Trustee*

131 West 35th Street

New York, New York 10001

1

By:    Jeffrey Chubak, Esq.


**WEIL, GOTSHAL & MANGES**

*Counsel for Patriach Partners Agency Services LLC*

767 Fifth Avenue

New York, New York 10153

By:    Chris Conrad, Esq.

        Mark Perry, Esq.

        Ronit Berkovich, Esq.


**DAVID S. JONES**

 **UNITED STATES BANKRUPTCY JUDGE:**

        This action arose out of the execution of two transactions that resulted in the abrupt

failure and Chapter 7 bankruptcy of TransCare Corporation ("**TransCare**"), a regional

ambulance and paratransit company, and its debtor affiliates. The first transaction involved the

foreclosure of TransCare's assets by its term lender, Patriarch Partners Agency Services

("**PPAS**"). The foreclosure was planned and authorized by PPAS's owner, Lynn Tilton

("**Tilton**"), who was also the sole director and majority owner of TransCare. The assets were

subsequently sold to another entity also controlled by Tilton. The second transaction involved the

granting of a lien to Ark II, an entity also owned by Tilton. Following a long-running and

vigorous litigation, Salvatore LaMonica, Esq., as Chapter 7 Trustee (the "**Trustee**") secured a

base judgment of $38.2 million against Tilton for breaching her fiduciary duty to the debtor, and

a base judgment of $39.2 million plus attorneys' fees against PPAS for the intentional fraudulent

transfer of the debtor's assets. The Trustee has successfully recovered the total judgment amount

against Tilton plus interest. The Trustee's judgment against and recovery from Tilton was not

predicated in whole or in part on any entitlement of the Trustee to legal fees, because the

2

**A14**

attorneys' fee award was made solely in the PPAS judgment due to the differing legal bases for

each judgment. The remaining piece of this action relates to the Trustee's entitlement to quantify

and recover the portion of the judgment against PPAS that awarded reasonable attorneys' fees to

the Trustee.

More specifically, before the Court is a motion of the Trustee of the estates of TransCare

and its debtor affiliates (collectively the "**Debtors**") titled *Motion to approve attorneys' fees*

*award against Defendant Patriarch Partners Agency Services, LLC under Debtor and Creditor*

*Law § 276-a* [ECF No. 169] (the "**Motion**" or "**Mot.**"). The Motion asserts that the Trustee is

entitled to attorneys' fees awarded by this Court's Post-Trial Findings of Fact and Conclusions of

Law (the "**PFC**"). Mot. at 2. Defendant PPAS filed an objection to the motion [ECF No. 178]

(the "**Objection**" or "**Obj.**") asserting (1) that the Trustee's requested fee award is barred by the

single-satisfaction rule under section 550(d) of the Bankruptcy Code because the Trustee has

already recovered from Tilton $51.8 million, an amount greater than the sum of the $45.5 million

judgment, inclusive of interest, against PPAS plus the total amount of attorneys' fees that the

Trustee now seeks, and (2) that the Trustee's request includes (i) fees incurred for "facially" non-

compensable claims that are unrelated to the prevailing fraudulent conveyance claim and (ii)

questionable and insufficiently documented time entries. Obj. at 7-8; 17. In response, the Trustee

filed a reply in support of the motion [ECF No. 184] (the "**Reply**") arguing that the prejudgment

interest which raised the total collected judgment amount against Tilton to $51.8 million is

separate from and cannot be used to satisfy the attorneys' fees judgment against PPAS, as doing

so would "defeat the purpose of prejudgment interest and §550." Reply ¶ 2. The Trustee further

argues that all the work it seeks compensation for is "directly related" to the fraudulent

conveyance claim. Reply ¶¶ 14 -16. As to PPAS's objection to certain time entries, the Trustee

contends that any documentation deficiencies do not warrant a complete denial of the motion, and that instead the Court can apply a percentage reduction (to which the Trustee consents in principle). Reply ¶ 20.  In a Sur Reply [ECF No. 185], PPAS argues that the Trustee bears the burden of showing that it continues to be injured even after receiving complete payment of the Tilton Judgment such that an award of attorneys' fee is still necessary. Sur Reply at 4-5. PPAS further reiterates that the Trustee is responsible for submitting well-documented time entries. Sur Reply at 6-7. This Court heard oral argument on the Motion on November 7, 2024 (the "**Hearing**") and reserved decision.

## BACKGROUND

This Decision assumes familiarity with the facts and history of this case and discusses only the background relevant to the motion it resolves.

TransCare owned and operated a network of ambulance transportation services in the Northeast and provided paratransit services to entities including the New York Metropolitan Transit Authority (the "**MTA**"). PFC at 3. Tilton was the sole director and majority owner of TransCare. *Id.* at 4. Tilton also owned and controlled PPAS, TransCare's term lender. *Id.* In early 2016, PPAS, authorized by Tilton, foreclosed on some of TransCare's assets (the "**Subject Collateral**") to satisfy $10 million out of the $43 million in outstanding debt under the TransCare Term Loan. *See generally* PFC at 21-35. Subsequently, on February 24, 2016, PPAS sold the Subject Collateral to Transcendence Transit, Inc. and Transcendence Transit II, Inc (collectively "**Transcendence**"), both of which were newly formed entities owned by Tilton. PFC at 31. On the same day, TransCare and ten related entities filed Chapter 7 petitions in this Court. *Id.* at 31. The newly formed Transcendence failed, resulting in three additional Debtors filing Chapter 7 petitions in this Court. *Id.* at 36. Following commencement of the bankruptcy

cases, PPAS filed a $35 million claim against the TransCare estate for the outstanding debt under the Term Loan.

**A.    The Adversary Proceeding**

On February 22, 2018, the Trustee commenced an adversary proceeding on behalf of the Debtors against, *inter alia*, Tilton and PPAS. [ECF No. 1]. After extensive pre-trial activity, the case proceeded to trial.

Following a six-day bench trial before the then-assigned Bankruptcy Judge Stuart M. Bernstein, this Court issued "Post-Trial Findings of Fact and Conclusions of Law," ruling in favor of the Trustee on two claims: (i) breach of fiduciary duty against Tilton and (ii) fraudulent transfer against PPAS and Transcendence. [ECF No. 138]. This decision does not detail the Court's lengthy, thorough post-trial ruling, which is available on the docket for reference. In essence, for the breach of fiduciary duty claim, the Court recommended a $41.8 million judgment against Tilton, based on a finding that she breached "her fiduciary duties of loyalty and good faith" owed to TransCare. PFC at 71. For the fraudulent transfer claim, the Court found that "TransCare transferred the Subject Collateral to PPAS with the intent to hinder and delay TransCare's creditors …" PFC at 76. The Court concluded "that the transfer resulting from the strict foreclosure must be avoided, and the Estate is awarded a judgment in the amount of $39.2 million against PPAS, in addition to the Trustee's reasonable attorneys' fees." PFC at 2. As a component of its award, the Court awarded attorneys' fees against PPAS pursuant to New York's

Debtor and Creditor Law ("DCL") § 276, which allows a plaintiff to recover attorneys' fees for avoiding an intentional fraudulent conveyance. PFC at 79.[1]

On July 15, 2020, this Court entered a judgment against PPAS and Transcendence in the amount of $39.2 million, plus pre-judgment interest of $6 million, for a total judgment of $45.2 million. [ECF No. 141]. The Court also awarded reasonable attorneys' fees against PPAS (but not Tilton) in an unspecified amount to be quantified upon an application by the Trustee that was to be submitted within fourteen days after the judgment became final and non-appealable. [ECF No. 141].

Tilton filed objections to this Court's recommendation as to Tilton and PPAS appealed the judgment as to PPAS. In a decision dated September 29, 2021, the District Court affirmed this Court's $45.2 million judgment against PPAS without modification and entered a judgment against Tilton for slightly less than what this Court recommended. The District Court's resulting judgment against Tilton was in the base amount of $38.2 million, plus pre-judgment interest of $13.3 million, for a total of $51.5 million. [ECF No. 167].

PPAS and Tilton appealed the District Court's judgment to the Second Circuit. On August 28, 2023, the Second Circuit affirmed this Court's judgment against PPAS and the District Court's judgment against Tilton, finding "no error in the damages award of $39.2 million for the fraudulent conveyance or the award of $38.2 million for the breach of fiduciary duties." *In re TransCare Corp.,* 81 F.4th 37, 58 (2d Cir. 2023). The Second Circuit denied PPAS's and Transcendence's petition for panel rehearing or rehearing en banc. [ECF No. 169-7]. PPAS did

---

[1] On December 6, 2019, New York adopted the Uniform Voidable Transactions Act (UVTA), replacing the NY Debtor and Creditor Law. The UVTA became effective on April 4, 2020. It applies to transfers made on or after its effective date. *See* DCL § 276.

not petition to the Supreme Court for a writ of certiorari within 90 days of the Second Circuit

decision. Mot. ¶ 42. As a result, this Court's judgment as against PPAS became final and non-

appealable on January 25, 2024. Mot. ¶ 31 n.2. The Trustee collected the supersedeas bond on

account of its now final judgment against Tilton of $51,794,847, inclusive of interest. Upon

receiving that payment, the Trustee filed a satisfaction of its judgment against Tilton (but not

PPAS) with the District Court. Obj. at 5.

### B.    Trustee's Motion for Attorneys' Fees

As this Court had previously approved, on February 7, 2024, within 14 days of the

judgment against PPAS becoming final, the Trustee filed the *Motion to Approve Attorneys' Fees

Award Against Defendant Patriarch Partners Agency Services, LLC under Debtor and Creditor

Law § 276-a*. [ECF No. 169]. The Trustee's Motion seeks an award of attorneys' fees in the

amount of $4,608,931.40 (plus prejudgment interest) in satisfaction of the attorneys' fee portion

of this Court's judgment[2] against PPAS for the intentional fraudulent conveyance claim. The

Trustee does not seek payment of the principal judgment amount nor interest on that amount in

light of the satisfaction of the judgment against Tilton, which arose from the same or overlapping

facts and circumstances as did the judgment against PPAS. The Motion asserts that the requested

fee award is reasonable. Mot. at 9.

On July 15, 2024, PPAS filed an objection to the Motion. [ECF No. 178]. Defendant

PPAS objects to the Motion on two primary grounds. First, PPAS argues that the amount the

Trustee already recovered from Tilton exceeds the combined total liability owed by PPAS,

---

[2] Again, the District Court and the Second Circuit both affirmed this Court's judgment against
PPAS, which, unlike the judgment against Tilton, included "an award of reasonable attorneys'
fees to be fixed by the Court in subsequent proceedings." PFC at 80.

inclusive of interest and the amount of attorneys' fees that the Trustee seeks from PPAS. PPAS contends that the Trustee thus has already received full compensation for its judgment against PPAS by virtue of the payment already received on account of the Tilton judgment, and that any additional recovery is barred by the "single satisfaction rule," discussed below. Second, PPAS contends that the Trustee's fee request is deficient because it relies on sloppy, vague time entries that do not clearly document whether the "requested fees were incurred solely because of [Trustee's] compensable claim …." Obj. at 11.

On October 21, 2024, the Trustee filed a reply [ECF No. 184], arguing that the single satisfaction rule is not an impediment to the satisfaction of the awarded attorneys' fees because the amount paid by Tilton was solely for her liability plus statutory interest (which is a statutorily prescribed means of making a judgment-holder whole for the loss of the time value and use of money). The Trustee thus argues that the prior payment by Tilton cannot have been on account of or in satisfaction of the fee award that was entered against solely PPAS, and not Tilton. Shortly after, with the Court's prior permission [ECF No. 182], PPAS filed a sur reply [ECF No. 185], largely reiterating its prior arguments and criticizing the Trustee for failing to cure the asserted deficiencies in its time entries submitted as asserted proof of the reasonable amounts of fees attributable to its litigation against PPAS.

This Court heard oral argument on November 7, 2024, and reserved decision.

## DISCUSSION

### A. Application of the single-satisfaction provision

The validity of this Court's award of attorneys' fees against PPAS was upheld on appeal and is not in question. The issue before the Court flows from the fact that the Trustee already has

collected a higher total amount from Tilton on account of the judgment against her inclusive of

interest (more than $51 million) than the combined total of the base judgment against PPAS, the

applicable statutory interest due, and the total amount of attorneys' fees now sought by the

Trustee. PPAS contends that because the total amount of the requested attorneys' fee award plus

all other possible judgment entitlements against PPAS is less than the total amount of the

already-collected judgment entitlements against Tilton, the requested recovery is barred by the

single satisfaction provision of section 550 of the Bankruptcy Code.

By way of statutory background, upon avoidance of a transfer, Section 550 empowers a

trustee to recover the transferred property or the value of the transferred property. 11 U.S.C. §

550(a). "The purpose of section 550 is to restore the estate to the financial condition it would

have been in if the avoided transfers had not occurred …" *In re Provident Royalties, LLC,* 581

B.R. 185, 195 (Bankr. N.D. Tex. 2017). Section 550(d) limits the trustee to "only a single

satisfaction" of the recovery. 11 U.S.C. § 550(d). This provision prevents the trustee from

pursuing multiple recoveries of the same avoided transfer. However, PPAS concedes that the

Trustee's entitlement as against PPAS in this action incorporates state law fraudulent conveyance

remedies, and that the applicable New York statutory scheme authorizes awards of attorneys' fees

as a component of a prevailing plaintiff's judgment. *See* Hr'g Tr. 23:8-24 [ECF No. 189].

There is no dispute that PPAS's math is correct. The amount the Trustee collected from

Tilton exceeds the total possible recovery from PPAS even including the full fee award that the

Trustee now seeks. In essence, PPAS is asking the Court to credit the large amount of

prejudgment interest paid by Tilton as a satisfaction of the attorneys' fee awarded against PPAS.

PPAS's position is analytically misguided because it ignores the purpose and effect of the

interest-award components of civil judgments. The purpose of prejudgment interest awards is "to

compensate [the trustee] for the value over time of the amount recovered." *In re Cassandra Grp.,* 338 B.R. 583, 599 (Bankr. S.D.N.Y. 2006); s*ee also In re FRK 3, LLC,* 2018 WL 5292131, at *13 (S.D.N.Y. Oct. 24, 2018) (factoring "the loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the loss" in the calculation of prejudgment interest.). In other words, the amount of interest owed by Tilton on account of the base judgment amount awarded against her was to compensate the Trustee according to statutorily established formulas for the many years that passed between the date of injury and the time judgment was entered and, eventually, paid. So, the Trustee's successful collection from Tilton was in an amount that, applying statutory formulas, was calculated to provide the economic value of the underlying or base liability amount. This recovery thus cannot be said to have been a recovery or satisfaction of any attorneys' fee award that was entered in addition to PPAS's or Tilton's obligations to pay the base judgment amount plus interest.

This conclusion is not overcome by PPAS's citation of *In re Lehman Bros. Holdings Inc.*, 2019 WL 3852445 (S.D.N.Y. Aug. 16, 2019), *aff'd*, 821 F. App'x 66 (2d Cir. 2020), in which PPAS argues the court credited prejudgment interest towards the single satisfaction of a trustee's recovery. In that case, the appellants sought recovery from appellee in the United States after receiving only partial recovery from appellee's subsidiary in the United Kingdom. The appellee, the parent company, had served as guarantor for its U.K. subsidiary. The district court, affirming the bankruptcy court, concluded that the statutory interest paid to the appellants in the U.K. counted towards the satisfaction of the recovery pursued in the U.S. *Id.* at 13. But the obligation at issue did not involve an attorneys' fee award at all; rather, the question was whether a large interest recovery on account of collection of a base obligation amount should be counted as against a proposed supplemental recovery against a second obligor on account of the same base

obligation amount. Here, the Trustee is not seeking anything but its attorneys' fee award, and that
award was solely against PPAS. Notably, PPAS did not put forward, and the Court did not find,
any case where the recovery of statutory interest from another judgment obligor meant that a
separate fee award against a different party became unenforceable by operation of the single-
satisfaction provision. In fact, PPAS's counsel acknowledged the lack of such precedent, labeling
the present situation "sui generis." Hr'g Tr. 21:19.

Again, specific aspects of the record here make clear the inapplicability of *In re Lehman
Bros. Holdings Inc.* Unlike in *In re Lehman Bros. Holdings Inc.*, the judgment against PPAS
included an award of attorneys' fees "**in addition**" to the base judgment against PPAS (a base
amount that was nearly identical to the base amount of the Tilton judgment). PFC at 2. (emphasis
added). And here, in proper recognition of the single satisfaction rule, the Trustee is not
attempting to recover the base or interest components of the underlying judgment against PPAS
because those amounts have been recovered from Tilton. But it cannot be said that the Trustee's
recovery to date has satisfied the separate attorneys' fee award entered solely against PPAS.

Accordingly, the single-satisfaction rule does not preclude the Trustee's requested award
of reasonable attorneys' fees as against PPAS.

### B.    Reasonable Attorneys' Fees

PPAS's objections to the reasonableness of the fees requested are more persuasive, and a
downward revision of the proposed fee award is necessary.

This Court awarded "reasonable attorneys' fees in connection with the intentional
fraudulent transfer claim against PPAS" in an amount to be determined later, *i.e.*, now. PFC at
100. The Court therefore must now determine what fees are "reasonable," which ordinarily

requires the Court to: "(1) determine the reasonable hourly rate; (2) determine the number of

hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee;

and (4) make any appropriate adjustments to arrive at the final fee award." *Building Serv. 32BJ*

*Health Fund v. Renaissance Equity Holdings*, *LLC,* 2010 WL 1438117, at *2 (S.D.N.Y. Apr. 9,

2010).

Here, the reasonableness of the charged hourly rates has not been disputed, and the Court

sees nothing atypical or inappropriate about those rates.

However, PPAS objects that the billing documentation is vague and sloppy, and often

appears to seek compensation for tasks not demonstrably related to the successful claim against

PPAS. By way of specific example, PPAS points out deficiencies including billing for

undocumented time [ECF No. 169-1 at 53], duplicate time entries, and unprecise task

descriptions [ECF No. 169-1 at 58, 110,131-135].  The Court agrees with these criticisms.

The Trustee provided lengthy time sheets that included frequent instances of block billing

and vague entries. Even when PPAS objected for this reason, the Trustee did not shore up its

application by providing additional information or detail, or by meaningfully justifying the block

billings and vague entries. Nor has the Trustee correlated specific entries with the successful

claim against PPAS.  Instead, the Trustee merely notes that he could have sought a much larger

contingency fee, which was pre-approved by this court as reasonable, Reply at 6; and that his fee

request is not governed by the relatively stringent professional-compensation portions of the

Bankruptcy Code. *See* 11 U.S.C. § 330. Furthermore, the Trustee argues that the requested fees

all resulted from an intensive and long-running litigation against both Tilton and PPAS, arising

from common circumstances, such that in the Trustee's view all the asserted fees are

compensable. Finally, the Trustee argues that the Court need not engage in a searching line-by-

line review of its records, and, instead, can and should impose an across-the-board reduction of

perhaps 15 to 20 percent if the Court considers a reduction warranted. Hr'g Tr. 11, 16.

The Court agrees with PPAS that the fee application is documented with insufficient

particularity. The Court also is troubled by a lack of specific allocation of work performed to the

Tilton case alone, or the PPAS case alone, or to tasks that have been shown with particularity to

have served the interests of both cases. On the other hand, PPAS intensively litigated the matter

and, at minimum, caused the Trustee to expend great effort defending appeals to the District and

Circuit Courts, which the Trustee puts at $1.6 million. Hr'g Tr. 9:17-22 (but acknowledging "a

lumping issue … which was 150 grand").

To touch briefly on the applicable legal standards for non-Bankruptcy Code review of fee

applications, "[w]hen time records reflect vague and duplicative entries, and entries for attorneys

performing ministerial tasks, the Court may order a reduction in attorneys' fees." *Gordon v. Site

16/17 Dev., LLC,* 2011 WL 3251520, at *5 (S.D.N.Y. July 28, 2011). "In lieu of an itemized

reduction, the court may make an across-the-board percentage reduction." *Cap. One Fin. Corp. v.

Cap. One Certified, Inc.,* 2019 WL 4014839, at *2 (E.D.N.Y. May 14, 2019), *report and

recommendation adopted*, 2019 WL 4015258 (E.D.N.Y. May 31, 2019). "[C]ourts have

recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an

application [and] have endorsed percentage cuts as a practical means of trimming fat from a fee

application." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir.

1983) (citations omitted). *See also Cosgrove v. Sears, Roebuck & Co.,* 1996 WL 99390, at *3

(S.D.N.Y. Mar. 7, 1996) ("[M]any of the descriptions of the work performed are vague, including

entries such as 'review of file,' 'review of documents' and 'review of [adversary's] letter.' There

can be no meaningful review of time records where the entries are too vague to determine

whether the hours were reasonably expended.") Courts have exercised a broad discretion in imposing percentage reductions. *See, e.g., Schruefer v. Winthorpe Grant, Inc.,* 2003 WL 21511157, at *3 (S.D.N.Y. July 2, 2003) (implementing a 10% reduction for vagueness); *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG,* 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (imposing a 25% reduction for block billing and excess).

The Court has reviewed the Trustee's billing documentation and concludes both that PPAS's criticisms are well founded at least in part, and also that the Court is unable (and not required) to exhaustively audit the submitted billing records to calculate a precise permissible award. Rather, as authorized by the case law cited above, the Court concludes that an across-the-board reduction is necessary, and is the only feasible means of identifying a reasonable fee award. In determining the amount to reduce the request, the Court is mindful that the applicant, here the Trustee, bears the burden of establishing an appropriate fee amount, and here the Trustee has declined to mount a detailed defense of its application. In determining the amount of reduction that is appropriate, the Court here balances several considerations: the reality that these litigations were intensively fought over many years and required substantial, intensive, and skilled legal work with a largely undisputed assertion of $1.45 million in appeal costs and fees ($1.6 million less the referenced $150,000 lump billing objection); the extensiveness of the documentation deficiencies; the general accuracy of the Trustee's observation that the Tilton and PPAS litigations did turn on the same facts and circumstances and required substantially overlapping work; the reality that the work led both to a judgment against Tilton that was not legally entitled to an award of fees and to an award against PPAS that was entitled to fees; and the Trustee's presumably conscious decision not to parse its records and more granularly focus

14

A26

on charges for PPAS-specific work or for work specific to the cause of action that succeeded as
against PPAS.

One specific consideration is how to take into account that the work for which recovery is
sought supported both judgments; the Court considered halving the award request since one
could say the work functionally was half in service of securing the Tilton judgment, and half in
service of securing the PPAS judgment. But that struck the Court as too restrictive, because much
of the work performed was necessary to secure the judgment against PPAS even as it also led to
the judgment against Tilton. It must be, however, that some incalculable (by this Court based on
available information) portion of the work was Tilton-specific, and therefore not properly
compensable by PPAS.

The Court also considered the fact that some unquantified portion of the work for which
the Trustee seeks compensation was aimed at supporting what ultimately proved unsuccessful
causes of action. Hrg. Tr. 12:6-18 (Court: "[D]id any of the work reflected in the time records go
towards unsuccessful causes of action?"; Counsel of PPAS: "Unsuccessful causes of action, I
believe the answer is yes" but "our point is that all these claims related in one way or another to
the fraudulent conveyance at issue"). However, "[a]s a general matter, if a plaintiff prevails on a
claim that generates a fee award, he may recover for work done on other claims if they were
substantially related to the claim on which he prevailed." *Tucker v. City of New York,* 704 F.
Supp. 2d 347, 358 (S.D.N.Y. 2010); *cf. In re Relativity Fashion, LLC,* 565 B.R. 50, 59 (Bankr.
S.D.N.Y. 2017) ("[A]pportionment is not required when claims are so intertwined that it would
be impracticable, if not impossible, to separate the attorneys' time into compensable and
noncompensable units.") (citation omitted). Given the relatedness of the prevailing and non-

15

Case: 25-1569, 06/23/2025, DktEntry: 1.1, Page 57 of 103

prevailing claims, the Court deems it appropriate for the Trustee to be compensated for substantially overlapping work.

Balancing these factors, the Court concludes that a total reduction of 40% of the fees sought is an appropriate discount. That translates to a reduction of $1,843,572.56 from the full amount sought, leaving an award of $2,765,358.84. That strikes the Court as a reasonable approximation of the Trustee's stated legal costs on appeal, which PPAS has not persuasively disputed, plus an additional roughly $1.3 million for long-running and intensive litigation including trial work that led to the judgment, the final component of which the Trustee seems finally about to collect.

The Court thus will grant the motion in part and approve a fee award of 60% of the amount sought in the Motion.

## CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's motion to recover attorneys' fees awarded against Defendant PPAS, subject to a 40% across-the-board reduction. The resulting fee award is $2,765,358.84. Movant is to submit a proposed order to effectuate this determination after obtaining comments as to form from PPAS's counsel.

SO ORDERED.

Dated: New York, New York
       February 5, 2025

                                          *s/ David S. Jones*
                                          Honorable David S. Jones
                                          United States Bankruptcy Judge

Case: 25-1569, 06/23/2025, DktEntry: 1.1, Page 58 of 103

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, et al.,<br><br>Debtors. | Chapter 7<br><br>Case No. 16-10407 (DSJ) |
| SALVATORE LAMONICA, as Chapter 7<br>Trustee of the Jointly-Administered Estates of<br>TransCare Corporation, et al.,<br><br>Plaintiff,<br><br>v.<br><br>LYNN TILTON, et al.,<br><br>Defendants. | Adv. Pro No. 18-01021 (DSJ)<br><br><br>**ORDER AND JUDGMENT**<br><br>BC 25,0005 |

For the reasons set forth in the Decision Partly Granting Trustee's Motion to Approve Attorney's Fees, entered February 5, 2025 (ECF #190), it is hereby ORDERED and ADJUDGED that:

1.    Judgment is hereby entered in favor of plaintiff Salvatore LaMonica, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation, et al. ("Trustee") and against defendant Patriarch Partners Agency Services, LLC ("PPAS") in the amount of $2,765,358.84; and post-judgment interest shall accrue thereon at the rate prescribed by 28 U.S.C. § 1961.

2.    The foregoing attorneys' fee award against PPAS is not subject to reduction or offset under 11 U.S.C. § 550(d) on account of the amended judgment in favor of the Trustee and against defendant Lynn Tilton (S.D.N.Y. 20-cv-06523 ECF #23) having been satisfied.

Dated: New York, New York
      February 7, 2025

                         *s/ David S. Jones*
                         Honorable David S. Jones
                         United States Bankruptcy Judge

Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Mark A. Perry
Christopher Conrad
WEIL, GOTSHAL & MANGES LLP
2001 M St NW #600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

*Counsel for Defendant Patriarch
Partners Agency Services, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, *et al.*,<br><br>                    Debtors. | Chapter 7<br><br>Case No. 16-10407-DSJ<br><br>(Jointly Administered) |
| SALVATORE LAMONICA, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation, *et al.*,<br><br>                    Plaintiffs,<br>v.<br><br>LYNN TILTON, *et al.*,<br><br>                    Defendants. | Adv. Pro. No. 18-AP-01021-DSJ<br>Re: ECF Nos. 191, 190 |

**<u>NOTICE OF APPEAL</u>**

**<u>Part 1: Identify the Appellant(s)</u>**

    1.     **Name(s) of appellant:** Patriarch Partners Agency Services, LLC ("**PPAS**").

    2.     **Position of appellant in the adversary proceeding that is the subject of this appeal:** Defendant.

**Part 2: Identify the subject of this appeal**

1.      **Describe the judgment, order, or decree appealed from:** PPAS, by and through its undersigned counsel, hereby appeals to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 158(a)(1), and in accordance with Federal Rules of Bankruptcy Procedure 8001, 8002, 8003 and 8004, from the United States Bankruptcy Court for the Southern District of New York's February 7, 2025 *Order and Judgment* [ECF No. 191] (the "**Judgment**"), along with the Court's accompanying *Decision Partly Granting Trustee's Motion to Approve Attorneys' Fees* [ECF No. 190] (the "**Decision**"). Copies of the Judgment and Decision are annexed hereto as **Exhibit A** and **Exhibit B**, respectively.

2.      **State the date on which the judgment, order, or decree was entered:** The Judgment was entered on Friday, February 7, 2025.

**Part 3: Identify the other parties to the appeal**

The relevant parties to the judgment, order, or decree appealed from, and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| Parties | Attorneys |
|---|---|
| **Plaintiff-Appellee:**<br>Salvatore LaMonica, as Chapter 7 Trustee | Gary Herbst, Esq.<br>Jacqulyn S. Loftin, Esq.<br>**LaMonica, Herbst & Maniscalco, LLP**<br>3305 Jerusalem Avenue<br>Wantagh, New York 11793<br>(516) 826-6500<br><br>Jeffrey Chubak, Esq.<br>**Amini LLC**<br>131 West 35th Street<br>New York, New York 10001<br>(212) 497-8247 |

Case: 25-1569, 06/23/2025, DktEntry: 1.1, Page 61 of 103

| Defendant-Appellant:<br>Patriarch Partners Agency Services, LLC | Ronit Berkovich, Esq.<br>**Weil, Gotshal & Manges LLP**<br>*767 Fifth Avenue*<br>*New York, New York 10153*<br>*(212) 310-8000*<br><br>Mark A. Perry, Esq.<br>Christopher Conrad, Esq.<br>**Weil, Gotshal & Manges LLP**<br>*2001 M St NW #600*<br>*Washington, D.C. 20036*<br>*(202) 682-7000* |

## Part 4: Not Applicable (No BAP in this District)

## Part 5: Signature

Dated: New York, New York
      February 21, 2025

Respectfully submitted,

*/s/ Ronit Berkovich*
Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Mark A. Perry
Christopher Conrad
WEIL, GOTSHAL & MANGES LLP
2001 M St NW #600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

*Counsel for Defendant Patriarch*
*Partners Agency Services, LLC*

3

**A32**

**<u>Exhibit A</u>**

**Order and Judgment [ECF No. 191]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, et al.,<br><br>                 Debtors. | Chapter 7<br><br>Case No. 16-10407 (DSJ) |
| SALVATORE LAMONICA, as Chapter 7<br>Trustee of the Jointly-Administered Estates of<br>TransCare Corporation, et al.,<br><br>                 Plaintiff,<br><br>     v.<br><br>LYNN TILTON, et al.,<br><br>                 Defendants. | Adv. Pro No. 18-01021 (DSJ)<br><br><br>**<u>ORDER AND JUDGMENT</u>**<br><br>    BC 25,0005 |

For the reasons set forth in the Decision Partly Granting Trustee's Motion to Approve Attorney's Fees, entered February 5, 2025 (ECF #190), it is hereby ORDERED and ADJUDGED that:

1.      Judgment is hereby entered in favor of plaintiff Salvatore LaMonica, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation, et al. ("Trustee") and against defendant Patriarch Partners Agency Services, LLC ("PPAS") in the amount of $2,765,358.84; and post-judgment interest shall accrue thereon at the rate prescribed by 28 U.S.C. § 1961.

2.      The foregoing attorneys' fee award against PPAS is not subject to reduction or offset under 11 U.S.C. § 550(d) on account of the amended judgment in favor of the Trustee and against defendant Lynn Tilton (S.D.N.Y. 20-cv-06523 ECF #23) having been satisfied.

Dated:  New York, New York
       February 7, 2025

                               *s/ David S. Jones*
                               Honorable David S. Jones
                               United States Bankruptcy Judge

**Exhibit B**

**Decision Partly Granting Trustee's Motion to Approve Attorneys' Fees [ECF No. 190]**

Case: 25-1569, 06/23/2025, DktEntry: 1.1, Page 65 of 103

UN TED TATE  AN RU T    OURT
 OUT  ERN D  TR  T O NE    OR
-----------------------------------------------------------------X

In re:                                               Chapter 7

TRANSCARE CORPORATION, et al.,                       Case No. 16-10407 (DSJ)
                                                     (Jointly Administered)

                        Debtors.

-----------------------------------------------------------------X
SALVATORE LAMONICA, as Chapter 7 Trustee
of the Jointly Administered Estates of
TransCare Corporation, et al.,

                        Plaintiff,                   Adv. Proc. No. 18-01021 (DSJ)

            v.

LYNN TILTON, et al.,

                        Defendants.

-----------------------------------------------------------------X


## DE    ON ART    GRANT NG TRU TEE   MOT ON TO A   RO  E
ATTORNE      EE


A   EARAN  E

  AMON  A  ER T  MAN    A  O

 *o  nse  or   ain i  /    a  er   r s  ee*

3305 Jerusalem Avenue

Wantagh, New York 11793

By:     Gary Herbst, Esq.

        Jacqulyn S. Loftin, Esq.


AM  N

 *o  nse  or   ain i  /    a  er   r s  ee*

131 West 35th Street

New York, New York 10001

1

By:    Jeffrey Chubak, Esq.


**E    GOT    A     MANGE**

*o  nse  or  a ria   ar ners   en   Servi es*

767 Fifth Avenue

New York, New York 10153

By:    Chris Conrad, Esq.

         Mark Perry, Esq.

         Ronit Berkovich, Esq.


**DA  D   JONE**

**UN TED  TATE    AN  RU T     JUDGE**

This action arose out of the execution of two transactions that resulted in the abrupt

failure and Chapter 7 bankruptcy of TransCare Corporation ("**Tr        r** "), a regional

ambulance and paratransit company, and its debtor affiliates. The first transaction involved the

foreclosure of TransCare's assets by its term lender, Patriarch Partners Agency Services

("    **A** "). The foreclosure was planned and authorized by PPAS's owner, Lynn Tilton

("**T**        "), who was also the sole director and majority owner of TransCare. The assets were

subsequently sold to another entity also controlled by Tilton. The second transaction involved the

granting of a lien to Ark II, an entity also owned by Tilton. Following a long-running and

vigorous litigation, Salvatore LaMonica, Esq., as Chapter 7 Trustee (the "**Tr        **") secured a

base judgment of $38.2 million against Tilton for breaching her fiduciary duty to the debtor, and

a base judgment of $39.2 million plus attorneys' fees against PPAS for the intentional fraudulent

transfer of the debtor's assets. The Trustee has successfully recovered the total judgment amount

against Tilton plus interest. The Trustee's judgment against and recovery from Tilton was not

predicated in whole or in part on any entitlement of the Trustee to legal fees, because the

2

attorneys' fee award was made solely in the PPAS judgment due to the differing legal bases for each judgment. The remaining piece of this action relates to the Trustee's entitlement to quantify and recover the portion of the judgment against PPAS that awarded reasonable attorneys' fees to the Trustee.

More specifically, before the Court is a motion of the Trustee of the estates of TransCare and its debtor affiliates (collectively the "**D      r**") titled *Mo ion o a  rove a orne  s ees a  ard a ains De endan a riar  ar ners  en Servi es     nder De or and  redi or a   a* [ECF No. 169] (the "**M      **" or "**M   .**"). The Motion asserts that the Trustee is entitled to attorneys' fees awarded by this Court's Post-Trial Findings of Fact and Conclusions of Law (the "      "). Mot. at 2. Defendant PPAS filed an objection to the motion [ECF No. 178] (the "**O         **" or "**O    **") asserting (1) that the Trustee's requested fee award is barred by the single-satisfaction rule under section 550(d) of the Bankruptcy Code because the Trustee has already recovered from Tilton $51.8 million, an amount greater than the sum of the $45.5 million judgment, inclusive of interest, against PPAS plus the total amount of attorneys' fees that the Trustee now seeks, and (2) that the Trustee's request includes (i) fees incurred for "facially" non-compensable claims that are unrelated to the prevailing fraudulent conveyance claim and (ii) questionable and insufficiently documented time entries. Obj. at 7-8; 17. In response, the Trustee filed a reply in support of the motion [ECF No. 184] (the "**R     **") arguing that the prejudgment interest which raised the total collected judgment amount against Tilton to $51.8 million is separate from and cannot be used to satisfy the attorneys' fees judgment against PPAS, as doing so would "defeat the purpose of prejudgment interest and §550." Reply ¶ 2. The Trustee further argues that all the work it seeks compensation for is "directly related" to the fraudulent conveyance claim. Reply ¶¶ 14 -16. As to PPAS's objection to certain time entries, the Trustee

3

Case: 25-1569   06/23/2025   DktEntry: 1.1   Page 68 of 103

contends that any documentation deficiencies do not warrant a complete denial of the motion,

and that instead the Court can apply a percentage reduction (to which the Trustee consents in

principle). Reply ¶ 20.  In a Sur Reply [ECF No. 185], PPAS argues that the Trustee bears the

burden of showing that it continues to be injured even after receiving complete payment of the

Tilton Judgment such that an award of attorneys' fee is still necessary. Sur Reply at 4-5. PPAS

further reiterates that the Trustee is responsible for submitting well-documented time entries. Sur

Reply at 6-7. This Court heard oral argument on the Motion on November 7, 2024 (the

"    r    ") and reserved decision.

## A    GROUND

This Decision assumes familiarity with the facts and history of this case and discusses

only the background relevant to the motion it resolves.

TransCare owned and operated a network of ambulance transportation services in the

Northeast and provided paratransit services to entities including the New York Metropolitan

Transit Authority (the "**MTA**"). PFC at 3. Tilton was the sole director and majority owner of

TransCare. *d.* at 4. Tilton also owned and controlled PPAS, TransCare's term lender. *d.* In early

2016, PPAS, authorized by Tilton, foreclosed on some of TransCare's assets (the "

r    ") to satisfy $10 million out of the $43 million in outstanding debt under the

TransCare Term Loan. *See   enera*   PFC at 21-35. Subsequently, on February 24, 2016, PPAS

sold the Subject Collateral to Transcendence Transit, Inc. and Transcendence Transit II, Inc

(collectively "**Tr      d     **"), both of which were newly formed entities owned by Tilton.

PFC at 31. On the same day, TransCare and ten related entities filed Chapter 7 petitions in this

Court. *d.* at 31. The newly formed Transcendence failed, resulting in three additional Debtors

filing Chapter 7 petitions in this Court. *d.* at 36. Following commencement of the bankruptcy

4

cases, PPAS filed a $35 million claim against the TransCare estate for the outstanding debt under the Term Loan.

**A    T    Ad    r    r    r    d**

On February 22, 2018, the Trustee commenced an adversary proceeding on behalf of the Debtors against, *in er a ia*, Tilton and PPAS. [ECF No. 1]. After extensive pre-trial activity, the case proceeded to trial.

Following a six-day bench trial before the then-assigned Bankruptcy Judge Stuart M. Bernstein, this Court issued "Post-Trial Findings of Fact and Conclusions of Law," ruling in favor of the Trustee on two claims: (i) breach of fiduciary duty against Tilton and (ii) fraudulent transfer against PPAS and Transcendence. [ECF No. 138]. This decision does not detail the Court's lengthy, thorough post-trial ruling, which is available on the docket for reference. In essence, for the breach of fiduciary duty claim, the Court recommended a $41.8 million judgment against Tilton, based on a finding that she breached "her fiduciary duties of loyalty and good faith" owed to TransCare. PFC at 71. For the fraudulent transfer claim, the Court found that "TransCare transferred the Subject Collateral to PPAS with the intent to hinder and delay TransCare's creditors …" PFC at 76. The Court concluded "that the transfer resulting from the strict foreclosure must be avoided, and the Estate is awarded a judgment in the amount of $39.2 million against PPAS, in addition to the Trustee's reasonable attorneys' fees." PFC at 2. As a component of its award, the Court awarded attorneys' fees against PPAS pursuant to New York's

A40

Debtor and Creditor Law ("DCL") § 276, which allows a plaintiff to recover attorneys' fees for avoiding an intentional fraudulent conveyance. PFC at 79.[1]

On July 15, 2020, this Court entered a judgment against PPAS and Transcendence in the amount of $39.2 million, plus pre-judgment interest of $6 million, for a total judgment of $45.2 million. [ECF No. 141]. The Court also awarded reasonable attorneys' fees against PPAS (but not Tilton) in an unspecified amount to be quantified upon an application by the Trustee that was to be submitted within fourteen days after the judgment became final and non-appealable. [ECF No. 141].

Tilton filed objections to this Court's recommendation as to Tilton and PPAS appealed the judgment as to PPAS. In a decision dated September 29, 2021, the District Court affirmed this Court's $45.2 million judgment against PPAS without modification and entered a judgment against Tilton for slightly less than what this Court recommended. The District Court's resulting judgment against Tilton was in the base amount of $38.2 million, plus pre-judgment interest of $13.3 million, for a total of $51.5 million. [ECF No. 167].

PPAS and Tilton appealed the District Court's judgment to the Second Circuit. On August 28, 2023, the Second Circuit affirmed this Court's judgment against PPAS and the District Court's judgment against Tilton, finding "no error in the damages award of $39.2 million for the fraudulent conveyance or the award of $38.2 million for the breach of fiduciary duties." *In re Trans care Corp.* 81 F.4th 37, 58 (2d Cir. 2023). The Second Circuit denied PPAS's and Transcendence's petition for panel rehearing or rehearing en banc. [ECF No. 169-7]. PPAS did

---

[1] On December 6, 2019, New York adopted the Uniform Voidable Transactions Act (UVTA), replacing the NY Debtor and Creditor Law. The UVTA became effective on April 4, 2020. It applies to transfers made on or after its effective date. *See* DCL § 276.

not petition to the Supreme Court for a writ of certiorari within 90 days of the Second Circuit

decision. Mot. ¶ 42.  As a result, this Court's judgment as against PPAS became final and non-

appealable on January 25, 2024. Mot. ¶ 31 n.2. The Trustee collected the supersedeas bond on

account of its now final judgment against Tilton of $51,794,847, inclusive of interest. Upon

receiving that payment, the Trustee filed a satisfaction of its judgment against Tilton (but not

PPAS) with the District Court. Obj. at 5.

### Tr     M        r A     r

As this Court had previously approved, on February 7, 2024, within 14 days of the

judgment against PPAS becoming final, the Trustee filed the *Mo ion o     rove    orne  s    ees*

*ard    ains De endan    a riar    ar ners    en    Servi es        nder De or and    redi or*

*a        a*. [ECF No. 169]. The Trustee's Motion seeks an award of attorneys' fees in the

amount of $4,608,931.40 (plus prejudgment interest) in satisfaction of the attorneys' fee portion

of this Court's judgment[2] against PPAS for the intentional fraudulent conveyance claim. The

Trustee does not seek payment of the principal judgment amount nor interest on that amount in

light of the satisfaction of the judgment against Tilton, which arose from the same or overlapping

facts and circumstances as did the judgment against PPAS. The Motion asserts that the requested

fee award is reasonable. Mot. at 9.

On July 15, 2024, PPAS filed an objection to the Motion. [ECF No. 178]. Defendant

PPAS objects to the Motion on two primary grounds. First, PPAS argues that the amount the

Trustee already recovered from Tilton exceeds the combined total liability owed by PPAS,

---

[2] Again, the District Court and the Second Circuit both affirmed this Court's judgment against
PPAS, which, unlike the judgment against Tilton, included "an award of reasonable attorneys'
fees to be fixed by the Court in subsequent proceedings." PFC at 80.

inclusive of interest and the amount of attorneys' fees that the Trustee seeks from PPAS. PPAS

contends that the Trustee thus has already received full compensation for its judgment against

PPAS by virtue of the payment already received on account of the Tilton judgment, and that any

additional recovery is barred by the "single satisfaction rule," discussed below. Second, PPAS

contends that the Trustee's fee request is deficient because it relies on sloppy, vague time entries

that do not clearly document whether the "requested fees were incurred solely because of

[Trustee's] compensable claim …." Obj. at 11.

On October 21, 2024, the Trustee filed a reply [ECF No. 184], arguing that the single

satisfaction rule is not an impediment to the satisfaction of the awarded attorneys' fees because

the amount paid by Tilton was solely for her liability plus statutory interest (which is a statutorily

prescribed means of making a judgment-holder whole for the loss of the time value and use of

money). The Trustee thus argues that the prior payment by Tilton cannot have been on account of

or in satisfaction of the fee award that was entered against solely PPAS, and not Tilton. Shortly

after, with the Court's prior permission [ECF No. 182], PPAS filed a sur reply [ECF No. 185],

largely reiterating its prior arguments and criticizing the Trustee for failing to cure the asserted

deficiencies in its time entries submitted as asserted proof of the reasonable amounts of fees

attributable to its litigation against PPAS.

This Court heard oral argument on November 7, 2024, and reserved decision.

## D    U    ON

**A  A**                              r

The validity of this Court's award of attorneys' fees against PPAS was upheld on appeal

and is not in question. The issue before the Court flows from the fact that the Trustee already has

collected a higher total amount from Tilton on account of the judgment against her inclusive of interest (more than $51 million) than the combined total of the base judgment against PPAS, the applicable statutory interest due, and the total amount of attorneys' fees now sought by the Trustee. PPAS contends that because the total amount of the requested attorneys' fee award plus all other possible judgment entitlements against PPAS is less than the total amount of the already-collected judgment entitlements against Tilton, the requested recovery is barred by the single satisfaction provision of section 550 of the Bankruptcy Code.

By way of statutory background, upon avoidance of a transfer, Section 550 empowers a trustee to recover the transferred property or the value of the transferred property. 11 U.S.C. § 550(a). "The purpose of section 550 is to restore the estate to the financial condition it would have been in if the avoided transfers had not occurred ..." *In re Providence Financial Investments*, 581 B.R. 185, 195 (Bankr. N.D. Tex. 2017). Section 550(d) limits the trustee to "only a single satisfaction" of the recovery. 11 U.S.C. § 550(d). This provision prevents the trustee from pursuing multiple recoveries of the same avoided transfer. However, PPAS concedes that the Trustee's entitlement as against PPAS in this action incorporates state law fraudulent conveyance remedies, and that the applicable New York statutory scheme authorizes awards of attorneys' fees as a component of a prevailing plaintiff's judgment. *See* Hr'g Tr. 23:8-24 [ECF No. 189].

There is no dispute that PPAS's math is correct. The amount the Trustee collected from Tilton exceeds the total possible recovery from PPAS even including the full fee award that the Trustee now seeks. In essence, PPAS is asking the Court to credit the large amount of prejudgment interest paid by Tilton as a satisfaction of the attorneys' fee awarded against PPAS.

PPAS's position is analytically misguided because it ignores the purpose and effect of the interest-award components of civil judgments. The purpose of prejudgment interest awards is "to

9

compensate [the trustee] for the value over time of the amount recovered." *In re Cassandra Gr.* 338 B.R. 583, 599 (Bankr. S.D.N.Y. 2006); s*ee also In re* 2018 WL 5292131, at *13 (S.D.N.Y. Oct. 24, 2018) (factoring "the loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the loss" in the calculation of prejudgment interest.). In other words, the amount of interest owed by Tilton on account of the base judgment amount awarded against her was to compensate the Trustee according to statutorily established formulas for the many years that passed between the date of injury and the time judgment was entered and, eventually, paid. So, the Trustee's successful collection from Tilton was in an amount that, applying statutory formulas, was calculated to provide the economic value of the underlying or base liability amount. This recovery thus cannot be said to have been a recovery or satisfaction of any attorneys' fee award that was entered in addition to PPAS's or Tilton's obligations to pay the base judgment amount plus interest.

This conclusion is not overcome by PPAS's citation of *In re e an ros. o din s n .*, 2019 WL 3852445 (S.D.N.Y. Aug. 16, 2019), *a d*, 821 F. App'x 66 (2d Cir. 2020), in which PPAS argues the court credited prejudgment interest towards the single satisfaction of a trustee's recovery. In that case, the appellants sought recovery from appellee in the United States after receiving only partial recovery from appellee's subsidiary in the United Kingdom. The appellee, the parent company, had served as guarantor for its U.K. subsidiary. The district court, affirming the bankruptcy court, concluded that the statutory interest paid to the appellants in the U.K. counted towards the satisfaction of the recovery pursued in the U.S. *d.* at 13. But the obligation at issue did not involve an attorneys' fee award at all; rather, the question was whether a large interest recovery on account of collection of a base obligation amount should be counted as against a proposed supplemental recovery against a second obligor on account of the same base

Case: 25-1569, 06/23/2025, DktEntry: 1.1, Page 75 of 103

obligation amount. Here, the Trustee is not seeking anything but its attorneys' fee award, and that award was solely against PPAS. Notably, PPAS did not put forward, and the Court did not find, any case where the recovery of statutory interest from another judgment obligor meant that a separate fee award against a different party became unenforceable by operation of the single-satisfaction provision. In fact, PPAS's counsel acknowledged the lack of such precedent, labeling the present situation "sui generis." Hr'g Tr. 21:19.

Again, specific aspects of the record here make clear the inapplicability of *In re Grand Prost. Holdings Inc.* Unlike in *In re Grand Prost. Holdings Inc.*, the judgment against PPAS included an award of attorneys' fees "**added**" to the base judgment against PPAS (a base amount that was nearly identical to the base amount of the Tilton judgment). PFC at 2. (emphasis added). And here, in proper recognition of the single satisfaction rule, the Trustee is not attempting to recover the base or interest components of the underlying judgment against PPAS because those amounts have been recovered from Tilton. But it cannot be said that the Trustee's recovery to date has satisfied the separate attorneys' fee award entered solely against PPAS.

Accordingly, the single-satisfaction rule does not preclude the Trustee's requested award of reasonable attorneys' fees as against PPAS.

### R        A    r

PPAS's objections to the reasonableness of the fees requested are more persuasive, and a downward revision of the proposed fee award is necessary.

This Court awarded "reasonable attorneys' fees in connection with the intentional fraudulent transfer claim against PPAS" in an amount to be determined later, *i.e.*, now. PFC at 100. The Court therefore must now determine what fees are "reasonable," which ordinarily

requires the Court to: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *i din Serv. J ea nd v. enaissan e i o din s*, 2010 WL 1438117, at *2 (S.D.N.Y. Apr. 9, 2010).

Here, the reasonableness of the charged hourly rates has not been disputed, and the Court sees nothing atypical or inappropriate about those rates.

However, PPAS objects that the billing documentation is vague and sloppy, and often appears to seek compensation for tasks not demonstrably related to the successful claim against PPAS. By way of specific example, PPAS points out deficiencies including billing for undocumented time [ECF No. 169-1 at 53], duplicate time entries, and unprecise task descriptions [ECF No. 169-1 at 58, 110,131-135]. The Court agrees with these criticisms.

The Trustee provided lengthy time sheets that included frequent instances of block billing and vague entries. Even when PPAS objected for this reason, the Trustee did not shore up its application by providing additional information or detail, or by meaningfully justifying the block billings and vague entries. Nor has the Trustee correlated specific entries with the successful claim against PPAS. Instead, the Trustee merely notes that he could have sought a much larger contingency fee, which was pre-approved by this court as reasonable, Reply at 6; and that his fee request is not governed by the relatively stringent professional-compensation portions of the Bankruptcy Code. *See* 11 U.S.C. § 330. Furthermore, the Trustee argues that the requested fees all resulted from an intensive and long-running litigation against both Tilton and PPAS, arising from common circumstances, such that in the Trustee's view all the asserted fees are compensable. Finally, the Trustee argues that the Court need not engage in a searching line-by-

line review of its records, and, instead, can and should impose an across-the-board reduction of

perhaps 15 to 20 percent if the Court considers a reduction warranted. Hr'g Tr. 11, 16.

The Court agrees with PPAS that the fee application is documented with insufficient

particularity. The Court also is troubled by a lack of specific allocation of work performed to the

Tilton case alone, or the PPAS case alone, or to tasks that have been shown with particularity to

have served the interests of both cases. On the other hand, PPAS intensively litigated the matter

and, at minimum, caused the Trustee to expend great effort defending appeals to the District and

Circuit Courts, which the Trustee puts at $1.6 million. Hr'g Tr. 9:17-22 (but acknowledging "a

lumping issue … which was 150 grand").

To touch briefly on the applicable legal standards for non-Bankruptcy Code review of fee

applications, "[w]hen time records reflect vague and duplicative entries, and entries for attorneys

performing ministerial tasks, the Court may order a reduction in attorneys' fees." *ordon v. Si e*

*/  Dev.*    2011 WL 3251520, at *5 (S.D.N.Y. July 28, 2011). "In lieu of an itemized

reduction, the court may make an across-the-board percentage reduction." *a . ne in. or . v.*

*a . ne er ied n .* 2019 WL 4014839, at *2 (E.D.N.Y. May 14, 2019), *re or and*

*re o enda ion ado ed*, 2019 WL 4015258 (E.D.N.Y. May 31, 2019). "[C]ourts have

recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an

application [and] have endorsed percentage cuts as a practical means of trimming fat from a fee

application." *. . S a e ss n or e arded i dren n . v. are* 711 F.2d 1136, 1146 (2d Cir.

1983) (citations omitted). *See a so os rove v. Sears oe o.* 1996 WL 99390, at *3

(S.D.N.Y. Mar. 7, 1996) ("[M]any of the descriptions of the work performed are vague, including

entries such as 'review of file,' 'review of documents' and 'review of [adversary's] letter.' There

can be no meaningful review of time records where the entries are too vague to determine

whether the hours were reasonably expended.") Courts have exercised a broad discretion in imposing percentage reductions. *See e. . S r e er v. in or e ran n .* 2003 WL 21511157, at *3 (S.D.N.Y. July 2, 2003) (implementing a 10% reduction for vagueness); *ss n o o o a s i i s or es i ion o r or Mas er ie es v. an s ria redi ans a* 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (imposing a 25% reduction for block billing and excess).

The Court has reviewed the Trustee's billing documentation and concludes both that PPAS's criticisms are well founded at least in part, and also that the Court is unable (and not required) to exhaustively audit the submitted billing records to calculate a precise permissible award. Rather, as authorized by the case law cited above, the Court concludes that an across-the-board reduction is necessary, and is the only feasible means of identifying a reasonable fee award. In determining the amount to reduce the request, the Court is mindful that the applicant, here the Trustee, bears the burden of establishing an appropriate fee amount, and here the Trustee has declined to mount a detailed defense of its application. In determining the amount of reduction that is appropriate, the Court here balances several considerations: the reality that these litigations were intensively fought over many years and required substantial, intensive, and skilled legal work with a largely undisputed assertion of $1.45 million in appeal costs and fees ($1.6 million less the referenced $150,000 lump billing objection); the extensiveness of the documentation deficiencies; the general accuracy of the Trustee's observation that the Tilton and PPAS litigations did turn on the same facts and circumstances and required substantially overlapping work; the reality that the work led both to a judgment against Tilton that was not legally entitled to an award of fees and to an award against PPAS that was entitled to fees; and the Trustee's presumably conscious decision not to parse its records and more granularly focus

14

A49

on charges for PPAS-specific work or for work specific to the cause of action that succeeded as against PPAS.

One specific consideration is how to take into account that the work for which recovery is sought supported both judgments; the Court considered halving the award request since one could say the work functionally was half in service of securing the Tilton judgment, and half in service of securing the PPAS judgment. But that struck the Court as too restrictive, because much of the work performed was necessary to secure the judgment against PPAS even as it also led to the judgment against Tilton. It must be, however, that some incalculable (by this Court based on available information) portion of the work was Tilton-specific, and therefore not properly compensable by PPAS.

The Court also considered the fact that some unquantified portion of the work for which the Trustee seeks compensation was aimed at supporting what ultimately proved unsuccessful causes of action. Hrg. Tr. 12:6-18 (Court: "[D]id any of the work reflected in the time records go towards unsuccessful causes of action?"; Counsel of PPAS: "Unsuccessful causes of action, I believe the answer is yes" but "our point is that all these claims related in one way or another to the fraudulent conveyance at issue"). However, "[a]s a general matter, if a plaintiff prevails on a claim that generates a fee award, he may recover for work done on other claims if they were substantially related to the claim on which he prevailed." *Hensley v. Eckerhart*, 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010); *In re Aqua Vision Construction*, 565 B.R. 50, 59 (Bankr. S.D.N.Y. 2017) ("[A]pportionment is not required when claims are so intertwined that it would be impracticable, if not impossible, to separate the attorneys' time into compensable and noncompensable units.") (citation omitted). Given the relatedness of the prevailing and non-

15

prevailing claims, the Court deems it appropriate for the Trustee to be compensated for substantially overlapping work.

Balancing these factors, the Court concludes that a total reduction of 40% of the fees sought is an appropriate discount. That translates to a reduction of $1,843,572.56 from the full amount sought, leaving an award of $2,765,358.84. That strikes the Court as a reasonable approximation of the Trustee's stated legal costs on appeal, which PPAS has not persuasively disputed, plus an additional roughly $1.3 million for long-running and intensive litigation including trial work that led to the judgment, the final component of which the Trustee seems finally about to collect.

The Court thus will grant the motion in part and approve a fee award of 60% of the amount sought in the Motion.

## ON    U   ON

For the foregoing reasons, the Court grants the Plaintiff's motion to recover attorneys' fees awarded against Defendant PPAS, subject to a 40% across-the-board reduction. The resulting fee award is $2,765,358.84. Movant is to submit a proposed order to effectuate this determination after obtaining comments as to form from PPAS's counsel.

SO ORDERED.

Dated: New York, New York
      February 5, 2025

                                     *s/ David S. Jones*
                                  Honorable David S. Jones
                                  United States Bankruptcy Judge

18-01021-dsj    Doc 192-1    Filed 02/21/25    Entered 02/21/25 16:31:06    Civil Cover
Sheet    Pg 1 of 2

| JS 44C/SDNY<br>REV. 12/04/24 | **CIVIL COVER SHEET**<br>The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet. |
|---|---|

| PLAINTIFFS<br>Salvatore LaMonica, as Chapter 7 Trustee | DEFENDANTS<br>Patriarch Partners Agency Services, LLC |
|---|---|

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Amini LLC<br>Attn.: Jeffrey Chubak<br>131 West 35th St<br>New York, NY 10001<br>Tel: (212) 497-8247 | LaMonica, Herbst & Maniscalco, LLP<br>Attn.: Gary Herbst; Jacqulyn S. Loftin<br>3305 Jerusalem Avenue<br>Wantagh, NY 11793<br>Tel: (516) 826-6500 | Weil, Gotshal & Manges LLP<br>Attn.: Ronit Berkovich<br>757 Fifth Avenue<br>New York, NY 10153<br>Tel: (212) 310-8000 | Weil, Gotshal & Manges LLP<br>Attn.: Mark A. Perry; Christopher Conrad<br>2001 M St NW #600<br>Washington, D.C. 20036<br>Tel: (202) 682-7000 |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 USC §158 appeal from February 7, 2025 Order and Judgment [ECF No. 191]

Has this action, case or proceeding, or one essentially the same been previously filed in SDNY at any time? No? ☐ Yes? ☒    Judge Previously Assigned <u>Judge Lewis A. Kaplan</u>

If yes, was this case Vol. ☒ Invol. ☐ Dismissed. No ☒ Yes ☐ If yes, give date _____ & Case No. _____

**IS THIS AN INTERNATIONAL ARBITRATION CASE?**    No ☒    Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*        **NATURE OF SUIT**

**TORTS**

**CONTRACT**
- ☐ 110 INSURANCE
- ☐ 120 MARINE
- ☐ 130 MILLER ACT
- ☐ 140 NEGOTIABLE INSTRUMENT
- ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- ☐ 151 MEDICARE ACT
- ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL. VETERANS)
- ☐ 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
- ☐ 160 STOCKHOLDERS SUITS
- ☐ 190 OTHER CONTRACT
- ☐ 195 CONTRACT PRODUCT LIABILITY
- ☐ 196 FRANCHISE

**PERSONAL INJURY**
- ☐ 310 AIRPLANE
- ☐ 315 AIRPLANE PRODUCT LIABILITY
- ☐ 320 ASSAULT, LIBEL & SLANDER
- ☐ 330 FEDERAL EMPLOYERS' LIABILITY
- ☐ 340 MARINE
- ☐ 345 MARINE PRODUCT LIABILITY
- ☐ 350 MOTOR VEHICLE
- ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY
- ☐ 360 OTHER PERSONAL INJURY
- ☐ 362 PERSONAL INJURY MED. MALPRACTICE
- ☐ 365 PERSONAL INJURY PRODUCT LIABILITY
- ☐ 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
- ☐ 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
- ☐ 370 OTHER FRAUD
- ☐ 371 TRUTH IN LENDING
- ☐ 380 OTHER PERSONAL PROPERTY DAMAGE
- ☐ 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
- ☐ 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- ☐ 690 OTHER

**PROPERTY RIGHTS**
- ☐ 820 COPYRIGHTS
- ☐ 830 PATENT
- ☐ 840 TRADEMARK
- ☐ 880 DEFEND TRADE SECRETS ACT

**LABOR**
- ☐ 710 FAIR LABOR STANDARDS ACT
- ☐ 720 LABOR/MGMT RELATIONS
- ☐ 740 RAILWAY LABOR ACT
- ☐ 751 FAMILY MEDICAL LEAVE ACT (FMLA)
- ☐ 790 OTHER LABOR LITIGATION
- ☐ 791 EMPL. RET. INC. SECURITY ACT

**IMMIGRATION**
- ☐ 462 NATURALIZATION APPLICATION
- ☐ 465 OTHER IMMIGRATION ACTIONS

**ACTIONS UNDER STATUTES**

**BANKRUPTCY**
- ☒ 422 APPEAL 28 USC 158
- ☐ 423 WITHDRAWAL 28 USC 157

**SOCIAL SECURITY**
- ☐ 861 MIA (1395ff)
- ☐ 862 BLACK LUNG (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID TITLE XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 TAXES (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
- ☐ 375 FALSE CLAIMS
- ☐ 376 QUI TAM
- ☐ 400 STATE REAPPORTIONMENT
- ☐ 410 ANTITRUST
- ☐ 430 BANKS & BANKING
- ☐ 450 COMMERCE
- ☐ 460 DEPORTATION
- ☐ 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
- ☐ 480 CONSUMER CREDIT
- ☐ 490 CABLE/SATELLITE TV
- ☐ 850 SECURITIES/COM-MODITIES/EXCHANGE
- ☐ 890 OTHER STATUTORY ACTIONS
- ☐ 891 AGRICULTURE ACTS
- ☐ 893 ENVIRONMENTAL MATTERS
- ☐ 895 FREEDOM OF INFORMATION ACT
- ☐ 896 ARBITRATION
- ☐ 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION
- ☐ 950 CONSTITUTION-ALITY OF STATE STATUTES

**REAL PROPERTY**
- ☐ 210 LAND CONDEMNATION
- ☐ 220 FORECLOSURE
- ☐ 230 RENT LEASE & EJECTMENT
- ☐ 240 TORTS TO LAND
- ☐ 245 TORT PRODUCT LIABILITY
- ☐ 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
- ☐ 440 OTHER CIVIL RIGHTS (Non-Prisoner)
- ☐ 441 VOTING
- ☐ 442 EMPLOYMENT
- ☐ 443 HOUSING ACCOMMODATIONS
- ☐ 445 AMERICANS WITH DISABILITIES – EMPLOYMENT
- ☐ 446 AMERICANS WITH DISABILITIES – OTHER
- ☐ 448 EDUCATION

**PRISONER PETITIONS**
- ☐ 463 ALIEN DETAINEE
- ☐ 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
- ☐ 530 HABEAS CORPUS
- ☐ 535 DEATH PENALTY
- ☐ 540 MANDAMUS AND OTHER

**PRISONER CIVIL RIGHTS**
- ☐ 550 CIVIL RIGHTS
- ☐ 555 PRISON CONDITION
- ☐ 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

<u>Check if demanded in complaint</u>

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13? IF SO, STATE

DEMAND $  18-01021-dsj      DIVER 192-1    Filed 02/21/25  JUDGE  Entered 02/21/25 16:31:00  DOCKET NUMBER  Civil Cover Sheet    Pg 2 of 2

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32)..

*Check YES only if demanded in complaint*
JURY DEMAND: ☐ YES  ☒ NO

---

## ORIGIN

*(PLACE AN x IN ONE BOX ONLY)*

☒1 Original Proceeding   ☐2 Removed from State Court   ☐3 Remanded from Appellate Court   ☐4 Reinstated or Reopened   ☐5 Transferred from [Specify District]   ☐6 Multidistrict Litigation (Transferred)   ☐7 Appeal to District Judge from Magistrate Judge

☐ a. all parties represented

☐ b. At least one party is a pro se.

☐8 Multidistrict Litigation (Direct File)

---

## BASIS OF JURISDICTION

*(PLACE AN x IN ONE BOX ONLY)*

☐1 U.S. PLAINTIFF    ☐2 U.S. DEFENDANT    ☒3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☐4 DIVERSITY

*IF DIVERISTY, INDICATE CITIZENSHIP BELOW.*

---

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | ☐1 | ☐1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | ☐3 | ☐3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | ☐5 | ☐5 |
| CITIZEN OF ANOTHER STATE | ☐2 | ☐2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | ☐4 | ☐4 | FOREIGN NATION | ☐6 | ☐6 |

---

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)
Plaintiff-Appellee Salvatore LaMonica, as Chapter 7 Trustee
LaMonica, Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793 (Nassau County)

---

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)
Defendant-Appellant Patriarch Partners Agency Services, LLC
71 Broadway, Lobby 2B #249
New York, New York 10006 (New York County)

---

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT AT THIS TIME, I HAVE BEEN UNABLE, WITHIN REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS.

---

## COURTHOUSE ASSIGNMENT

I have reviewed Rules 18(a) and 20(a) of the Rules for the Division of Business Among District Judges, Southern District of New York, and I hereby certify that this case should be assigned to the courthouse indicated below pursuant thereto.

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐WHITE PLAINS    ☒MANHATTAN

---

DATE   */s/ Ronit Berkovich*
SIGNATURE OF ATTORNEY OF RECORD

Receipt #

ADMITTED TO PRACTICE IN THIS DISTRICT
☐ NO
☒ YES (DATE ADMITTED Mo. _May_ Yr. _2005_)
Attorney Bar Code # RB5797

---

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so designated.

Tammi M. Hellwig, Clerk of Court by _____ Deputy Clerk, Dated _____.

---

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, *et al.*,<br><br>Debtors. | 1:25-cv-01691-PAE<br><br>Hon. Paul A. Engelmayer<br><br>Bankr. Case No. 16-10407-DSJ<br><br>Adv. Proc. No. 18-AP-01021-DSJ |
| SALVATORE LAMONICA, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation, *et al.*,<br>Plaintiffs,<br>v.<br><br>LYNN TILTON, *et al.*,<br>Defendants. | |

### MOTION OF PATRIARCH PARTNERS AGENCY SERVICES LLC
### FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES
### <u>COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(d)(2)</u>

Dated: April 4, 2025

Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Mark A. Perry*
Christopher Conrad*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7248
Facsimile: (202) 857-0940

* *Admission Applications Pending*

*Attorneys for Defendant–Appellant Patriarch
Partners Agency Services, LLC*

## TABLE OF CONTENTS

Preliminary Statement and Relief Sought ........................................................................ 1

Facts Necessary to Understand the Question Presented ................................................. 3

Question for Certification ................................................................................................ 6

Reasons Why the Direct Appeal Should Be Allowed ..................................................... 6

Conclusion ........................................................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*5200 Enters. Ltd. v. City of New York*,
2020 WL 10054400 (M.D. Fla. July 16, 2020) ........................................................8

*In re Arabella Petroleum Co.*,
647 B.R. 851 (Bankr. W.D. Tex. 2022) ..................................................................7

*In re Belmonte*,
931 F.3d 147 (2d Cir. 2019)..................................................................................4

*In re Dreier LLP*,
462 B.R. 474 (Bankr. S.D.N.Y. 2011) ....................................................................2

*In re FirstEnergy Solutions Corp.*,
No. 18-50757 (AMK) (Bankr. N.D. Ohio Nov. 27, 2019), ECF No. 3458 ...........................6

*In re Gravel*,
2019 WL 3783317 (Bankr. D. Vt. Aug. 12, 2019) ....................................................6

*Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair Inc.*,
419 B.R. 749 (M.D. Tenn. 2009)............................................................................7

*In re IMMC Corp.*,
2016 WL 356026 (D. Del. Jan. 28, 2016) ................................................................6

*In re Kassas*,
2021 WL 2446270 (Bankr. C.D. Cal. June 15, 2021) .................................................6

*Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vt., Inc.*,
845 F.2d 404 (2d Cir. 1988).................................................................................7

*In re Martin*,
2011 WL 6130422 (Bankr. E.D. Tenn. Dec. 8, 2011)..................................................7

*In re Provident Royalties, LLC*,
581 B.R. 185 (Bankr. N.D. Tex. 2017).................................................................2, 7

*In re Prudential of Fla. Leasing, Inc.*,
478 F.3d 1291 (11th Cir. 2007) .............................................................................7

*In re Strasser*,
303 B.R. 841 (Bankr. D. Ariz. 2004)......................................................................7

*In re SVB Financial Grp.*,
2024 WL 4345730 (S.D.N.Y. Sept. 30, 2024)...........................................................6

*In re TransCare Corp.*,
    2020 WL 8021060 (Bankr. S.D.N.Y. July 6, 2020) ...................................................3

*In re TransCare Corp.*,
    2021 WL 4459733 (S.D.N.Y. Sept. 29, 2021)...........................................................4

*In re TransCare Corp.*,
    592 B.R. 272 (Bankr. S.D.N.Y. 2018) ......................................................................3

*In re TransCare Corp.*,
    602 B.R. 234 (Bankr. S.D.N.Y. 2019) ......................................................................3

*In re TransCare Corp.*,
    81 F.4th 37 (2d Cir. 2023) ...............................................................................1, 3, 4

*In re TransCare Corp.*,
    No. 1:20-cv-06523 (S.D.N.Y.)..............................................................................4, 5

*In re Tribune Media Co.*,
    2016 WL 1451161 (D. Del. Apr. 12, 2016) ...............................................................6

*United States v. Goebel*,
    2024 WL 3718660 (E.D.N.Y. Aug. 8, 2024) .............................................................6

## Statutes

11 U.S.C. § 544...................................................................................................3, 7

11 U.S.C. § 548......................................................................................................3

11 U.S.C. § 550..............................................................................................*passim*

28 U.S.C. § 158..............................................................................................*passim*

New York's Debtor and Creditor Law § 276.......................................................2, 4, 7

New York's Debtor and Creditor Law § 276-a .......................................................*passim*

## Rules

Federal Rule of Bankruptcy Procedure 8006 ........................................................1, 8

## Non-periodical Publications

1 Collier on Bankruptcy ¶ 5.06 (16th ed. 2025). ....................................................6, 7

16 Charles A. Wright & Arthur R. Miller § 3926.1 (3d ed. updated June 2024) .......................6, 7

Defendant–Appellant Patriarch Partners Agency Services, LLC ("PPAS") respectfully seeks certification of a direct appeal to the U.S. Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 158(d)(2) and Federal Rule of Bankruptcy Procedure 8006.

## PRELIMINARY STATEMENT AND RELIEF SOUGHT

Applying 11 U.S.C. § 550(d)'s single-satisfaction rule, the Second Circuit gave the chapter 7 Trustee in this case two options to recover for the same fraudulent transfer. First, he could collect $51.8 million from Lynn Tilton for breaching her fiduciary duties to the debtor, TransCare Corporation ("TransCare"), under Delaware law. Second, he could elect to recover a lesser judgment from TransCare's administrative agent, PPAS, including an unliquidated fees award under section 276-a of New York's Debtor and Creditor Law ("DCL"). The Trustee had to choose between these alternative recoveries because section 550(d) of the Bankruptcy Code "limited [him] to only a single satisfaction." *In re TransCare Corp.*, 81 F.4th 37, 48 (2d Cir. 2023).

After the Second Circuit issued its mandate, the Trustee chose to proceed against Ms. Tilton, who paid her $51.8 million judgment in full. But in violation of § 550(d)'s single-satisfaction rule and the Second Circuit's mandate, the Trustee subsequently sought attorneys' fees from PPAS, even though the sum total of PPAS's ultimate liability—including the fees—was millions less than the $51.8 million satisfaction he had already received from Ms. Tilton:

| | Ms. Tilton | | PPAS |
|---|---|---|---|
| Judgment Principal [Paid by Ms. Tilton] | $38,200,000 | | $39,200,000 |
| Pre-Judgment Interest [Paid by Ms. Tilton] | $13,324,997 | | $6,025,523 |
| Post-Judgment Interest [Paid by Ms. Tilton] | $269,850 | | $229,386 |
| Attorneys' Fees and Costs | $0 | | $2,765,358 |
| Maximum Liability and Satisfaction under 11 U.S.C. § 550 | $51,794,847 | > | $48,220,267 |

PPAS opposed the Trustee's fee request because, among other things, it was barred by § 550(d)'s single-satisfaction principle. *See In re TransCare Corp.*, Adv. Proc. No. 18-01021 (DSJ) (July 15, 2024), ECF No. 178 ("PPAS Objection"), at 5–9.

The Bankruptcy Court—citing a lack of precedent—declined to enforce § 550(d)'s command and instead authorized a $54.5 million total recovery that combined judgment components from both defendants to preserve the "purpose and effect of the interest-award components of civil judgments." *In re TransCare Corp.*, Adv. Proc. No. 18-01021 (DSJ) (Feb. 5, 2025), ECF No. 190 ("Decision Partly Granting Trustee's Motion to Approve Attorneys' Fees" or "Decision"), at 9. Yet, there is no "interest-award component" exception to § 550(d), which operates on a "transfer-by-transfer basis" and powerfully caps the Trustee's total recovery at the value of the avoided transfer, regardless of the nature of the underlying claims asserted. *In re Provident Royalties, LLC*, 581 B.R. 185, 195 (Bankr. N.D. Tex. 2017) ("The purpose of section 550 is to restore the estate to the financial condition it would have been in if the avoided transfers had not occurred, and the specific purpose of section 550(d) is to act as a restrictor plate on the roaring engine of recovery . . . ."). By its plain terms and well-accepted operation, the single-satisfaction rule should have precluded the Trustee's recovery of his DCL § 276-a fees award—which "is derivative of an actual fraudulent transfer claim under DCL § 276" and "stands or falls with the disposition of that claim." *In re Dreier LLP*, 462 B.R. 474, 494 (Bankr. S.D.N.Y. 2011) (cleaned up). The Bankruptcy Court ignored these statutory precepts and granted a windfall recovery, making the Trustee *more than* whole.

Because the Bankruptcy Court premised its ruling on a lack of controlling precedent, this Court "shall" certify PPAS's legal challenge to that ruling for direct appeal pursuant to 28 U.S.C. § 158(d)(2). Certification will afford the Second Circuit the opportunity to resolve a purely legal question concerning the scope of § 550(d)'s single-satisfaction rule, finally disposing of the sole remaining issue in this long-running litigation.

## FACTS NECESSARY TO UNDERSTAND THE QUESTION PRESENTED

TransCare provided ambulance services for emergency and non-emergency patients to hospitals and municipalities throughout the mid-Atlantic region. *In re TransCare Corp.*, 2020 WL 8021060, at *2 (Bankr. S.D.N.Y. July 6, 2020). Ms. Tilton was the indirect majority owner of TransCare. *Id.* PPAS acted as an administrative agent on behalf of several lenders to TransCare. *In re TransCare Corp.*, 81 F.4th at 44.

As TransCare's finances deteriorated in February 2016, Ms. Tilton directed PPAS to foreclose on certain of TransCare's assets (the "Subject Collateral"). *In re TransCare Corp.*, 2020 WL 8021060, at *9, *12. PPAS accepted the Subject Collateral "in satisfaction of $10 million (of approximately $43 million) outstanding under [a] Term Loan" PPAS had issued to TransCare. *Id.* at *12. TransCare thereafter filed chapter 7 petitions. *Id.* at *13–15. The Trustee was appointed on February 25, 2016. *Id.* at *13. The entire business failed soon after. *Id.* at *13–15.

On February 22, 2018, the Trustee commenced an adversary proceeding against, among others, Ms. Tilton and PPAS. *In re TransCare Corp.*, Adv. Proc. No. 18-01021 (SMB) (Bankr. S.D.N.Y. Feb. 22, 2018), ECF No. 1. His original complaint asserted nine claims. *Id.* at ¶¶ 97–138. Six were dismissed in part or in full. *See generally In re TransCare Corp.*, 592 B.R. 272 (Bankr. S.D.N.Y. 2018). A fourteen-count amended complaint followed. *See In re TransCare Corp.*, 602 B.R. 234, 242 (Bankr. S.D.N.Y. 2019). Two of those counts were dismissed. *Id.* at 237, 246–48. The Bankruptcy Court then tried the remaining counts during a six-day bench trial in July and August of 2019. *In re Transcare Corp.*, 2020 WL 8021060, at *16. A year later, the court issued its post-trial findings of fact and conclusions of law. *See id.* at *17–33. On Count 1 ("Breach of Fiduciary Duty Against Tilton"), the court recommended a $41.8 million judgment against Ms. Tilton for breaching her fiduciary duties to TransCare under Delaware law. *Id.* at *29. On Count 7 ("Fraudulent Transfer Against PPAS"), the court found that TransCare had transferred

3

the Subject Collateral to PPAS with the intent to hinder or delay TransCare's creditors. *Id.* at *31.

It avoided the transaction under sections 548 and 550(a) of the Bankruptcy Code and DCL § 276,

a state avoidance action made available to the Trustee by section 544 of the Bankruptcy Code. *Id.*

at *29–32. It entered a $39.2 million judgment against PPAS, along with a derivative, unliquidated

attorneys' fees award under DCL § 276-a. *Id.* at *31–33.

     PPAS and Ms. Tilton appealed. This Court issued a consolidated decision in September

2021 affirming the Bankruptcy Court's fraudulent transfer ruling as to PPAS and adopting its

recommendation as to Ms. Tilton with a slight downward adjustment to her damages. *See In re*

*TransCare Corp.*, 2021 WL 4459733, at *20 (S.D.N.Y. Sept. 29, 2021). Like the Bankruptcy

Court, this Court recognized that "the trustee is entitled only to a *single satisfaction*" on his claims

against both defendants. *Id.* (emphasis added); *see also In re TransCare Corp.*, No. 1:20-cv-06523

(LAK) (S.D.N.Y. Oct. 6, 2021), ECF No. 11 at 2 ("[T]he Trustee shall be entitled only to a *single*

*satisfaction* on his respective judgments." (emphasis added)).

     Thereafter, the Trustee successfully sought prejudgment interest from Ms. Tilton under

Delaware law, increasing her total liability to $51.5 million. *See In re TransCare Corp.*, No.

1:20-cv-06523 (LAK) (S.D.N.Y. Dec. 22, 2021), ECF No. 23 at 2. That amount grew to $51.8

million on account of post-judgment interest. Meanwhile, the Trustee's judgment against PPAS

topped out at approximately $45.5 million.

     Both PPAS and Ms. Tilton appealed to the Second Circuit, which affirmed this Court's

liability findings and damages calculations. Once again, the Second Circuit observed that the

Trustee's myriad claims against PPAS and Ms. Tilton gave rise to "parallel damages" subject to

the single-satisfaction principle. *In re TransCare Corp.*, 81 F.4th at 48; *see also id.* at 58 (citing

*In re Belmonte*, 931 F.3d 147, 154 (2d Cir. 2019) (observing that § 550 "authorizes the Trustee to

pursue recovery from all available sources until the full amount of unlawfully transferred Estate property is fully realized for the Estate's creditors.")).

As soon as the Second Circuit's mandate issued, the Trustee elected to proceed against the surety that had issued the supersedeas bond securing the judgment against Ms. Tilton pending resolution of the appeal.  This Court granted the motion and the surety paid 100% of the amount requested by the Trustee—approximately $51.8 million in total.  The Trustee filed a satisfaction of judgment as to Ms. Tilton. *In re TransCare Corp.*, No. 1:20-cv-06523 (LAK) (S.D.N.Y. Dec. 7, 2023), ECF No. 44.[1]

Despite having received complete satisfaction from Ms. Tilton, the Trustee filed a motion to recover attorneys' fees from PPAS under DCL § 276-a.  *In re TransCare Corp.*, Adv. Proc. No. 18-01021 (DSJ) (Feb. 7, 2024), ECF No. 169.  PPAS opposed the fee request on the principal ground that it was barred by the single-satisfaction rule.  PPAS Objection at 5–9.  The Trustee's only response was that application of this statutory rule "would defeat the purpose of prejudgment interest and § 550." *In re TransCare Corp.*, Adv. Proc. No. 18-01021 (DSJ) (Oct. 21, 2024), ECF No. 184 ("Trustee's Reply"), at 1.

The Bankruptcy Court—recognizing that there was "no dispute" over the relevant facts, Decision at 9—sided with the Trustee.  The court acknowledged that "[t]he amount the Trustee collected from [Ms.] Tilton exceeds the total possible recovery from PPAS even including the full fee award that the Trustee [sought]." *Id.* at 9.  Nevertheless, expressly relying on the lack of controlling precedent, the Bankruptcy Court authorized the Trustee to recover fees from PPAS without regard to § 550(d)'s single-satisfaction rule. *Id.* at 9–11.  PPAS appealed; this Court has

---

[1] The satisfaction of judgment filed with the District Court omits post-judgment interest paid by Ms. Tilton in the amount of $269,849.81.  Her total payment equaled $51,794,847.07.

jurisdiction over PPAS's appeal pursuant to 28 U.S.C. § 158(a).  PPAS now moves to certify its challenge to the Bankruptcy Court's single-satisfaction ruling for direct appeal to the Second Circuit.  *See id*. § 158(d)(2).

## QUESTION FOR CERTIFICATION

Whether, as a matter of law, the Bankruptcy Code's single-satisfaction rule (11 U.S.C. § 550(d)) precludes a chapter 7 Trustee from recovering attorneys' fees on a fraudulent transfer award against one defendant (PPAS) when the Trustee has already recovered a complete satisfaction for the same avoided transfer from a second defendant (Ms. Tilton) that undisputedly exceeds the total award (including fees) against the first defendant (PPAS).

## REASONS WHY THE DIRECT APPEAL SHOULD BE ALLOWED

28 U.S.C. § 158(d)(2)(i) provides that a district court "shall" certify a direct appeal of a bankruptcy court's final order to the "appropriate court of appeals" if "the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States."  *Id*.  In bankruptcy cases that present "unsettled questions of law," *In re SVB Financial Grp.*, 2024 WL 4345730, at *1 (S.D.N.Y. Sept. 30, 2024), certification is mandatory, 1 Collier on Bankruptcy ¶ 5.06[3][b] & n.19 (16th ed. 2025).  This owes to 28 U.S.C. § 158(d)(2)'s use of "shall," which "cabin[s]" the "seeming discretion of the lower court."  16 Charles A. Wright & Arthur R. Miller § 3926.1 (3d ed. updated June 2024).  The obligatory nature of section 158(d)(2)'s certification process is well-established.  *See, e.g.*, *United States v. Goebel*, 2024 WL 3718660, at *2 (E.D.N.Y. Aug. 8, 2024); *In re Kassas*, 2021 WL 2446270, at *2 (Bankr. C.D. Cal. June 15, 2021); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio Nov. 27, 2019), ECF No. 3458, at 4; *In re Gravel*, 2019 WL 3783317, at *7–8 (Bankr. D. Vt. Aug. 12, 2019); *In re Tribune Media Co.*, 2016 WL 1451161, at *3 (D. Del. Apr. 12, 2016); *In re IMMC Corp.*, 2016 WL 356026, at *6 (D. Del. Jan. 28, 2016).

In rejecting PPAS's single-satisfaction argument, the Bankruptcy Court pointed to the lack of "any case where the recovery of statutory interest from another judgment obligor meant that a separate fee award against a different party became unenforceable by operation of the single-satisfaction provision" in § 550. Decision at 11. PPAS alerted the Bankruptcy Court to applicable *non-bankruptcy* precedent, *see Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vt., Inc.*, 845 F.2d 404, 410–11 (2d Cir. 1988), but acknowledged that neither party had marshaled controlling authority applying 11 U.S.C. § 550(d), *see* Decision at 11. The Trustee, for his part, described the single-satisfaction issue raised by PPAS as "novel." Trustee's Reply at 3, ¶ 2. All agree, then, that a precedential gap exists, such that direct certification is warranted under 28 U.S.C. § 158(d)(2)(i). *See* 1 Collier on Bankruptcy ¶ 5.06[3]; 16 Charles A. Wright & Arthur R. Miller § 3926.1.

To be sure, ample *persuasive* authority supports PPAS's position. Bankruptcy courts have noted, for example, that § 550(d)'s single-satisfaction rule "expressly places controls on § 544 state law avoidance actions" like the Trustee's claims under DCL §§ 276 and 276-a. *In re Strasser*, 303 B.R. 841, 848 (Bankr. D. Ariz. 2004) (internal citations omitted); *see also In re Martin*, 2011 WL 6130422, at *11–12 (Bankr. E.D. Tenn. Dec. 8, 2011) (similar) (citing *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair Inc.*, 419 B.R. 749, 760 (M.D. Tenn. 2009)). There also is widespread recognition that the single-satisfaction rule applies on a "transfer-by-transfer" basis. *In re Provident Royalties, LLC*, 581 B.R. at 195 (citing *In re Prudential of Fla. Leasing, Inc.*, 478 F.3d 1291, 1302 (11th Cir. 2007)); *In re Arabella Petroleum Co.*, 647 B.R. 851, 880 (Bankr. W.D. Tex. 2022) (same). Accordingly, distinct claims that arise out of the same avoided transfer may not "interfere with each other or [] affect the application of the single satisfaction rule." *In re Provident Royalties, LLC*, 581 B.R. at 195.

**A64**

Yet, because neither the Second Circuit nor the Supreme Court has addressed the issue squarely, there is no "controlling" decision for purposes of 28 U.S.C. § 158(d)(2). *See, e.g.*, *5200 Enters. Ltd. v. City of New York*, 2020 WL 10054400, at *3 (M.D. Fla. July 16, 2020) (certifying a request for direct appeal despite the existence of an out-of-circuit, on-point district court decision because such decision was not "controlling"). PPAS will establish in its appeal that the plain language of the Bankruptcy Code as applied by lower courts in analogous contexts requires reversal of the Bankruptcy Court's fee award. The single satisfaction rule authorizes the Trustee to recover only once for all claims tracing to the same fraudulent transfer. The Second Circuit is the appropriate tribunal to resolve this purely legal issue in the first instance.

## <u>CONCLUSION</u>

For the foregoing reasons, PPAS respectfully requests that the Court certify a direct appeal to the U.S. Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 158(d)(2) and Federal Rule of Bankruptcy Procedure 8006.

8

Dated:  April 4, 2025
        New York, New York

Respectfully submitted,

_/s/ Ronit Berkovich_
Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Mark A. Perry*
Christopher Conrad*
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7248
Facsimile: (202) 857-0940

_* Admission Applications Pending_

_Attorneys for Defendant–Appellant_
_Patriarch Partners Agency Services,_
_LLC_

Avery Samet
Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
Attorneys for Plaintiff-Appellee

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>TRANSCARE CORPORATION<br>　　　　　　　　　Debtor | 25-cv-01691-PAE<br><br>16-bk-10407-DSJ |
| PATRIARCH PARTNERS AGENCY<br>SERVICES, LLC<br>　　　　　　　　　Appellant<br>v.<br>SALVATORE LAMONICA, as Chapter 7<br>Trustee<br>　　　　　　　　　Appellee | 18-ap-01021-DSJ<br><br>Re: ECF #4 ("Motion") |

## RESPONSE IN OPPOSITION TO MOTION FOR
## CERTIFICATION OF DIRECT APPEAL TO SECOND CIRCUIT

Plaintiff-appellee and judgment creditor Salvatore LaMonica as Chapter 7 Trustee ("Trustee") submits this memorandum of law in opposition to the Motion of defendant-appellant and judgment debtor Patriarch Partners Agency Services, LLC ("PPAS") to certify direct appeal of the Decision Partly Granting Trustee's Motion to Approve Attorney's Fees (18-ap-01021-DSJ ECF #190, 2025 WL 427305, "Decision") and resulting judgment (18-ap-01021-DSJ ECF #191) to the Second Circuit.

PPAS's argument, that direct appeal is warranted because the instant matter presents legal questions as to which there is no controlling decision, under 28 U.S.C. § 158(d)(2)(i), fails.

The primary issue on appeal (ECF #3), that which is the subject of the Motion, is whether the Bankruptcy Court erred in holding 11 U.S.C. § 550(d) did not preclude the Debtor and Creditor

Law ("DCL") § 276-a attorneys' fees award against PPAS, notwithstanding that the amount recovered on the judgment against defendant Lynn Tilton ("Tilton") on the fiduciary duty claim against her inclusive of prejudgment interest, exceeded the amount of the PPAS judgment on the fraudulent conveyance claim against it (which arose from the same injury as the Tilton judgment, 2020 WL 8021060, at *32; 2021 WL 4459733, at *20), inclusive of prejudgment interest, plus DCL § 276-a attorneys' fees awarded.

Stated differently, PPAS challenges the Bankruptcy Court's conclusion that "it cannot be said that the Trustee's recovery to date [from Tilton] has satisfied the separate attorneys' fee award entered solely against PPAS"; that "the single-satisfaction rule does not preclude the Trustee's requested award of reasonable attorneys' fees as against PPAS"; and that "PPAS's position is analytically misguided because it ignores the purpose and effect of the interest-award component of civil judgments." (Decision at 9, 11.)

This issue is addressed by controlling authority. The Second Circuit has held DCL § 276-a obligations are "ancillary" i.e. in addition to underlying fraudulent conveyance liability. *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240 (2d Cir. 1987) ("the claim under DCL § 276-a is ancillary to the other DCL claims [so] it stands or falls with their disposition"); Black's Law Dictionary (12th ed.) (defining "ancillary" as "supplementary", and construing "supplementary" in the definition of supplemental disclosure as "additional"). *See also TransCare*, 2020 WL 8021060, at *1 (DCL § 276-a award is "in addition" to the underlying judgment against PPAS). Controlling authority also makes clear full compensation on the Tilton judgment on the fiduciary duty claim includes prejudgment interest. *West Virginia v. U.S.*, 479 U.S. 305, 310 & n.2 (1987) ("Prejudgment interest is an element of complete compensation"; "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until

2

**A68**

judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress"); *State of Kansas v. State of Colorado*, 2000 WL 34508307, at *40 (Aug. 31, 2000) (collecting cases) ("there is now ample authority that prejudgment interest is not an added remedy, but simply is part of providing full compensation for the injured party").   If full compensation on the Tilton judgment requires payment of prejudgment interest, and DCL § 276-a obligations are in addition to the fraudulent conveyance judgment against PPAS arising from the same injury, it follows that DCL § 276-a obligations cannot be satisfied with prejudgment interest recovered on the Tilton judgment.

PPAS's argument is based on the false premise that the Bankruptcy Court's determination was based upon an alleged lack of controlling precedent.  (Motion at 2, 5, 7.)  What the Bankruptcy Court actually found was zero authority to support PPAS's position, that it could pay its DCL § 276-a liability with prejudgment interest the Trustee recovered on the Tilton judgment.  (Decision at 11 ("PPAS did not put forward, and the Court did not find, any case where the recovery of statutory interest from another judgment obligor meant that a separate fee award against a different party became unenforceable by operation of the single satisfaction provision").)  The Motion should be denied.

Dated: New York, NY          Amini LLC
        April 10, 2025

                              /s/ Jeffrey Chubak
                              Avery Samet
                              Jeffrey Chubak
                              Amini LLC
                              131 West 35th Street
                              12th Floor
                              New York, NY 10001
                              (212) 490-4700
                              asamet@aminillc.com
                              jchubak@aminillc.com
                              Attorneys for Plaintiff-Appellee

## <u>CERTIFICATION</u>

I certify under penalty of perjury that the foregoing document has 657 words as calculated using the word-count feature of the word-processing program used to prepare the same, and so complies with FRBP 8013(f)(3)(A).  Executed this 10th day of April, 2025.

/s/ Jeffrey Chubak_____

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr>
<td>

In re:

TRANSCARE CORPORATION, *et al.*,

                Debtors.

</td>
<td>

1:25-cv-01691-PAE

Hon. Paul A. Engelmayer

Bankr. Case No. 16-10407-DSJ

Adv. Proc. No. 18-AP-01021-DSJ

</td>
</tr>
<tr>
<td>

SALVATORE LAMONICA, as Chapter 7 Trustee
of the Jointly-Administered Estates of TransCare
Corporation, *et al.*,

                Plaintiffs,

v.

LYNN TILTON, *et al.*,

                Defendants.

</td>
<td></td>
</tr>
</table>

### REPLY OF PATRIARCH PARTNERS AGENCY SERVICES LLC IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT UNDER 28 U.S.C. § 158(d)(2)

Under 28 U.S.C. § 158(d)(2), Patriarch Partners Agency Services LLC ("PPAS") seeks direct certification to the Second Circuit of its legal challenge to the Bankruptcy Court's refusal to apply the Bankruptcy Code's single-satisfaction rule, 11 U.S.C. § 550(d), to the Trustee's request for fraudulent transfer attorneys' fees. The Trustee resists direct certification on the ground that the relevant "issue on appeal" "is addressed by controlling authority." Opp. at 1–2. Yet, the only cases that the Trustee cites as "controlling" do not even mention § 550(d). *See West Virginia v. United States*, 479 U.S. 305, 307 (1987) (analyzing whether the United States can recover "site preparation costs plus prejudgment interest" under the Disaster Relief Act of 1970); *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 243 (2d Cir. 1987) (analyzing whether "admiralty jurisdiction is available to consider an equitable claim to set aside a transfer to a creditor allegedly made to frustrate payment of a maritime debt"). The absence of any *actual* "controlling decision" means

that this Court "shall" certify the question presented to the Second Circuit, 28 U.S.C. § 158(d)(2), which can either "accept or decline the direct appeal" in its sole discretion, *Weber v. United States*, 484 F.3d 154, 157 (2d Cir. 2007); *see also* 1 Collier on Bankruptcy ¶ 5.06[4][e] (16th ed. 2025).

Rather than offer a "controlling decision," the Trustee advances a new merits position, arguing that non-avoidance causes of action evade § 550(d)'s sweep if they are "in addition to underlying fraudulent conveyance liability." Opp. at 2 (citing *Atlanta Shipping Corp.*, 818 F.2d at 240). That position is foreclosed by the law of the case, as the Second Circuit, this Court, and the Bankruptcy Court all previously recognized that § 550(d)'s single-satisfaction rule applies to the Trustee's fiduciary duty claim against Ms. Lynn Tilton, even though that claim is legally distinct from PPAS's "underlying fraudulent conveyance liability." Opp. at 2; *see In re TransCare Corp.*, 81 F.4th 37, 48 (2d Cir. 2023); *In re TransCare Corp.*, 2021 WL 4459733, at *20 (S.D.N.Y. Sept. 29, 2021); *In re TransCare Corp.*, 2020 WL 8021060, at *32 (Bankr. S.D.N.Y. July 6, 2020). If separate *non-avoidance* claims are subject to § 550(d)'s statutory limit, then so too is the Trustee's claim for attorneys' fees, which is "derivative of an *actual* fraudulent transfer claim" and serves to make the Trustee whole for the same underlying injury. *In re Dreier LLP*, 462 B.R. 474, 494 (Bankr. S.D.N.Y. 2011) (citing New York's Debtor and Creditor Law § 276-a) (emphasis added). Regardless, the Second Circuit has foreclosed the Trustee's "ancillary obligation" argument. *See Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vt., Inc.*, 845 F.2d 404, 410–11 (2d Cir. 1988).

After full briefing, an extensive hearing, and supplemental submissions, the Bankruptcy Court acknowledged the lack of precedent "where the recovery of statutory interest from another judgment obligor meant that a separate fee award against a different party became unenforceable by operation of the single-satisfaction provision" in § 550. *In re TransCare Corp.*, Adv. Proc. No. 18-01021 (DSJ) (Bankr. S.D.N.Y. Feb. 5, 2025), ECF No. 190, at 11. According to the Trustee,

"[w]hat the Bankruptcy Court actually found was zero authority to support PPAS's position."  Opp.

at 3.  But there also is zero authority supporting *the Trustee's* position.  That is why the certification

provision was added to the Bankruptcy Code.  *See Weber*, 484 F.3d at 158 ("Legislative history

confirms that Congress intended § [158(d)(2)(A)] to facilitate our provision of guidance on pure

questions of law.  Among the reasons for the direct appeal amendment [in the Bankruptcy Abuse

Prevention and Consumer Protection Act] was widespread unhappiness at the paucity of settled

bankruptcy-law precedent.").  PPAS's certification motion should be granted.


Dated:  April 17, 2025                                    Respectfully submitted,
        New York, New York

                                                          */s/ Ronit Berkovich*
                                                          Ronit Berkovich
                                                          WEIL, GOTSHAL & MANGES LLP
                                                          767 Fifth Avenue
                                                          New York, New York  10153
                                                          Telephone:  (212) 310-8000
                                                          Facsimile:  (212) 310-8007

                                                          Mark A. Perry*
                                                          Christopher Conrad*
                                                          WEIL, GOTSHAL & MANGES LLP
                                                          2001 M Street, NW, Suite 600
                                                          Washington, D.C. 20036
                                                          Telephone: (202) 682-7248
                                                          Facsimile: (202) 857-0940

                                                          * *Admission Applications Pending*

                                                          *Attorneys for Defendant–Appellant*
                                                          *Patriarch Partners Agency Services,*
                                                          *LLC*

**A73**

## <u>CERTIFICATION</u>

I certify under penalty of perjury that the foregoing document has 616 words as calculated using the word-count feature of the word-processing program used to prepare the same, and so complies with Federal Rule of Bankruptcy Procedure 8013(f)(3)(A).  Executed this 17th day of April, 2025.